## GREGG, *Appellant*, v. CURRIER, *Appellee*.

Generally, an executor or administrator is authorized to receive the rents and profits of the real estate of the testator, or intestate, only in case the estate is insolvent. In most other cases the lands descend, upon the death of the holder, to his heirs or devisees, with no right or duty on the part of the executor or administrator to intermeddle therewith.

Where a testator declared his will to be, that, after the payment of debts and legacies, the residue of his real estate should be sold by his executor, and the proceeds thereof be equally divided among his children, and there was sufficient personal property to pay debts, legacies and expenses of administration, the estate was not administered in the insolvent course, and the executor never sold any portion of the real estate :

*Held*, that the sureties in such executor's bond could not be holden to pay rents and profits of the real estate of the testator, received by the executor, and charged to him by the judge of probate, on the settlement of his account of administration.

Where a will directs the executor to sell the real estate, only a naked power of sale is conferred, without any interest, and the lands descend to the heirs or devisees, who are entitled to the profits until the power is executed.

Sureties in an executor's bond are only responsible for the doings of their principal in the discharge of his official duty, and not for his acts beyond the scope of his authority.

APPEAL from the decree of the judge of probate for this county. The facts of the case sufficiently appear in the opinion of the court.

*Bartlett*, for the appellant.

*George Bell*, for the appellee.

FOWLER, J. This is an appeal by David A. Gregg, who was one of the sureties of Joseph A. Gregg, as executor of the last will and testament of Moses C. Pillsbury, late of Derry, deceased, from the decree of the judge of probate for this county, made October 10, 1855, charging George W. Pinkerton, executor of said Joseph A. Gregg, upon the settlement of said Joseph A. Gregg's final account of the administration of the estate of said Pillsbury, with a balance of $52.58, for rents received by said

Gregg v. Currier.

Gregg, executor of the widow of said Pillsbury, from April, 1851, to April, 1854, belonging to the estate; and another balance of $118.33, for rents belonging to the estate, received by said Gregg, executor, of sundry persons in 1851, 1852 and 1853. The case was referred to an auditor in this court, from whose report it appears that the estate of said Pillsbury was not administered in the insolvent course; that there was personal property sufficient to pay debts, legacies and expenses of administration; that no part of the real estate was sold by the executor, and that the widow waived the provision made for her in the will of the deceased, taking her dower and distributive share in lieu thereof. A copy of the will makes a part of the auditor's report; from which it appears, that, besides a legacy of money, and another of household furniture, the deceased gave to his widow the semi-annual interest of $1000, and the income of all his real estate during her widowhood, subject to certain conditions and restrictions. After giving considerable pecuniary legacies to each of his nine children, and several grand-children, the will finally disposed of the residue of his estate in the following words :

"As it regards the residue of my estate, which may remain unappropriated, my will is, that my beloved wife, Mehitable C. Pillsbury, receive therefrom suitable compensation for what she may do for the support and comfort of my sister, Nancy C. Pillsbury, while she (my sister) may live in the house with her; and the remainder, together with what may be left of the bequests, &c., to her use for my beloved wife, Mehitable C., at her decease or otherwise, my will is, that the real estate be sold, unless some one or more of my children may desire to take it for their own use, at the appraisal, accounting to my said executors for what may be more than his or their share; and, if so, then he, my said executor, is hereby authorized, and fully empowered, to convey the same according to law in such cases made and provided; the whole of the residue remaining, after paying expenses, to be equally divided between my nine children, before enumerated, or their legal representatives, in case of the decease of any of them."

The appellant, who was one of the sureties upon the administration bond of the executor of Pillsbury, suggests that the judge of probate erred in charging his principal with the rents of the real estate of the testator, because the estate, being solvent, and not administered in the insolvent course, the executor, as such, had no right, by law, to receive those rents, or to enter and hold possession of the lands for the purpose of taking the profits thereof; in other words, that the taking charge of and keeping the real estate of the testator was not a duty which the executor was bound, by law, or had any right to perform, in order to administer the estate according to the provisions of the will and the terms of his bond, and that as surety for the performance of the ordinary and necessary duties of an executor under the will, the appellant cannot rightfully be held responsible for the unauthorized acts of the executor.

We think this position sound, and well taken. By the statute of this State an executor or administrator is authorized and required to receive the rents and profits of the real estate of the testate or intestate, in case the estate is insolvent, and bound to account for the net proceeds thereof in his administration account. Rev. Stat., ch. 159, sec. 10 ; *Sparhawk* v. *Allen*, 5 Foster (25 N. H.) 266. But generally, in other cases, the land descends, on the death of the testator or intestate, to the devisees or heirs, with no right or duty on the part of the executor or administrator, as such, in any way to intermeddle therewith.

Nor is there any thing in the provisions of the will in this case to change the general rule. We are not called upon to determine what effect the widow's abandonment of the provisions made for her in his will might have upon the construction of that portion thereof relating to the disposition of the residuum of the testator's estate, nor whether, by the language of the will, the executor was fully authorized to sell the real estate in any event. Admitting the proper construction of the clause to confer upon him a power of sale, it is quite certain that it does not vest in him any estate in the land; and the power to sell never having been exercised, its existence does not affect the question before us.

Even a devise of land to be sold by the executor, without words giving the estate to him, only invests him with a power of sale, and gives him no interest. Where a man directs his executors to sell his lands, this is but a bare authority without an interest, for the land in the mean time descends to the heir-at-law, who, until the sale, is entitled to the profits. A power to executors to sell and dispose of an estate, as they shall judge most beneficial to the legatees, does not authorize them to enter upon and occupy the estate; they have no interest in the land itself, and until they exercise this power, it descends to the heirs. But if a man devise his lands to his executors to be sold, then there is a power coupled with an interest, for the executors, in the mean time, take possession of the land and the profits. Sugden on Powers, (1st Am. Ed.) 106–111; *Bergen & al.* v. *Bennett*, 1 Caines' Cas. 16; *Ball* v. *Ball*, 3 Day 384; *Haskell* v. *House*, Const. Rep. 106.

A reference to the terms of the will is the only method by which to determine whether a naked power only is intended to be given; and such reference, in connection with the fact stated in the auditor's report, satisfies us there could have been no such manifest design to have the lands sold by the executor at all events; that, in order to carry into effect the whole interest of the will, it is necessary the naked power conferred should be accompanied by a trust and an interest, or to give any opportunity for the application of the doctrine of constructive conversion. *Franklin* v. *Osgood*, 14 Johns. 527; *Jackson* v. *Ferris*, 15 Johns. 346; *Teback* v. *Smith*, 3 Binney 69; *Osgood* v. *Franklin*, 2 Johns. Ch. 20.

Even if there were ground, as there certainly is not, for holding that the provisions of the will conferred upon the executor an interest in the lands, it is quite doubtful whether he would have held that interest as executor, or as trustee, under the will; and if in the latter capacity his sureties, as executor, could hardly have been liable for the faithful performance of the trust. *Leavitt* v. *Wooster*, 14 N. H. 566. But it is unnecessary to consider that question. It is quite clear that the will of the testator

could at most have given to the executor only a naked power of sale, coupled with no interest whatever, and as that power was never exercised, the real estate, upon the death of the testator, descended to and vested in the heirs-at-law, who became at once entitled to the rents and profits thereof. Not only was it no part of the duty of the executor, in his official capacity, to receive those rents and profits, but he had no right to intermeddle with them, unless as the agent of those heirs. If he collected and appropriated them, without their authority, or with it, he was personally, and his individual estate may still be, responsible; but he was not bound to settle for them in his administration account, and therefore the sureties upon his bond are not answerable for them. *McCoy* v. *Scott*, 2 Rawle 222; *Gibson & als.* v. *Farley & al.*, 16 Mass. 280.

As it is apparent that the decree of the judge of probate proceeded upon an erroneous view of the powers and duties of the executor, under the will or under the law, it must be reversed as to the two items for the allowance of which the appeal was taken, amounting together to the sum of $170.91; thus reducing the balance found remaining in the hands of the executor, Oct. 10, 1855, from $1975.17, as found by the decree, to the sum of $1804.26. The appellant having prevailed in the entire subject matter of the appeal, is entitled to the costs of the proceedings here.

*Decree reversed for* $170.91.