Merrimack,
June 3, 1902.

CLOUGH, *Ex'r*, *v.* CLOUGH, *Ap't.*

SAME *v.* CLOUGH, *Ap't.*

CLOUGH *v.* CLOUGH, *Ex'r.*

Where a will provides that the widow of the testator is to have the use and income of the whole estate so long as she remains unmarried, and so much of the principal as may be necessary for her support, she has an absolute and unconditional right to the use and income of the property during her life, subject to defeat by her remarriage, and a conditional right to the principal, dependent upon her needs.

In the interpretation of a will, that construction is to be adopted which will avoid conflict and give effect to all provisions of the instrument.

A provision that the widow of a testator may have the privilege of a home in a dwelling-house devised to his son is not necessarily inconsistent with an intention to invest her with a life estate in all his property so long as she remains unmarried.

An executor who occupies real estate in which his co-executor has a life interest under the will is not to be charged with rent of the premises, nor credited with money expended for taxes and repairs, upon a settlement of his account of administration.

A provision in a will, that a daughter of the testator is to have a home during her life in a dwelling-house devised to his son, is to be construed as affording her reasonable accommodations merely, when it is apparent that the burden of her support would render the devise of little or no value.

Where a will provides that the widow of the testator is to have the use and income of the estate during her life, and so much of the principal as may be necessary for her support, her right to encroach upon the principal does not depend upon her using all means to derive a reasonable income from the property in her possession ; and if her co-executor has advanced to her from his own funds sums necessary for her support, he is entitled to reimbursement therefor upon a settlement of his administration account, and cannot be charged with the rent of premises held by the widow as life tenant and occupied by him, although such occupancy diminished the income of the estate.

THE FIRST TWO CASES are appeals by residuary legatees, from the allowance by the probate court of the account of Henry W. Clough, surviving executor of the will of Charles H. Clough. THE THIRD CASE is a petition by Ellen M. Clough, for a construction of the will and for a decree for the payment of a legacy. The cases were tried together, and transferred from the April term, 1901, of the superior court by *Peaslee,* J.

Charles H. Clough, the testator, was formerly a small manufacturer in Concord, and gave up business and removed to East Concord about 1885. His immediate family then consisted of his wife, Mary C., and a daughter, Ellen M., who was then about twenty-five years of age. His other children were Charles T. Clough and Susan B. Tucker (both of whom were settled in the West and in good circumstances), and Henry W. Clough, who with an invalid wife and two children resided in a house on Green street in Concord, which was owned by Charles H., and for which Henry paid rent. At about this time Ellen desired to teach school and to take music pupils, but her father objected for the reason that he and her mother desired her services. Ellen complied with his wishes, and remained at home and cared for her parents until the decease of the mother. She had no other occupation and no income except about two hundred dollars a year for her services as organist in a church in Concord. Henry was employed as a bookkeeper in Concord at a salary of fifteen dollars a week. He was sometimes behind in his rent, and had no property. Shortly after the execution of the will he wanted to go South, but his father desired him to remain in Concord, and he did so. The relations between the parties were harmonious.

In 1886, Charles H. executed a will which provides as follows:

" First. I give, devise, and bequeath unto my wife, Mary C. Clough, the use and income of all my estate, real, personal, and mixed, to have and to enjoy the same for and during her natural life if she remains my widow, and in case the use and income shall not be sufficient for the comfortable support of my said wife, then my will is that she shall use so much of the principal of my estate as she may think sufficient for that purpose.

" Second. I give and bequeath unto my daughter, Ellen M. Clough, the sum of five hundred dollars, to be paid to her on the decease of my said wife, provided she remains unmarried and stays at home with her parents and cares for them until the decease of my said wife.

" Third. I give, devise, and bequeath unto my son, Henry W. Clough, of Concord, the dwelling-house which I own situated in said Concord on the easterly side of Green street, and now occupied by him, to have and to hold the same to him and his heirs forever on the following conditions, to wit: that he pay to my estate on the decease of my said wife the sum of one thousand dollars, and shall also furnish a home there for my daughter, Ellen M. Clough, in case she remains single and desires to have a home there, also that my said wife shall have the privilege of a home there in case she desires it during her natural life.

" Fourth. As to all the remainder of my estate, real, personal,

and mixed, which may remain unexpended at the decease of my said wife, I give, devise, and bequeath the same to my four children . . . to have and to hold the same to them and their heirs forever in equal portions."

Mary C. and Henry were made executors of the will. The testator died in 1889. His property then consisted of the Green-street house, valued at $3,500; homestead, farm lands, etc., valued at $3,640; personal property, about $1,000. The net income of the estate, aside from the Green-street house and the tenement occupied by the testator in his lifetime, did not exceed fifty dollars a year, and was wholly insufficient to support the widow. Including the rent of the Green-street house, it was substantially sufficient to support her as she had been accustomed to live. Her property consisted of about five hundred dollars deposited in a savings bank.

The widow died in December, 1897, and Henry, as surviving executor of the will of Charles H., filed and settled an account from which these appeals were taken. He has charged the estate for taxes, repairs, etc., for the Green-street house and has not charged himself for rent of the same. He has occupied it continuously since his father's death. The widow and Ellen lived in another house under an agreement that was satisfactory to them. Charles H. had a savings bank deposit of $87.67, which the executors assigned to the widow. For a time after the mother's decease Henry paid ten dollars a month to his sister in lieu of her claim for a home in the Green-street house.

It was ordered that Henry account for the rent up to the death of his mother and for the principal of the savings bank deposit; that he furnish a home to Ellen in the Green-street house and pay her five hundred dollars, with interest from the date of Mary C.'s death; and that his charges for taxes, repairs, etc., be allowed. Both parties excepted.

*Samuel C. Eastman*, for Julian Clough.

*Leach, Stevens & Couch*, for Ellen M. Clough.

*Fred H. Gould* and *Martin & Howe*, for Henry W. Clough.

WALKER, J. The language of the first clause of the will presents no ambiguity. The testator, desiring to provide amply for the support of his wife, gave her an estate for life in his entire estate, with the right, if her comfortable support should require it, to use a part or all of the property for that purpose, provided she should remain unmarried. Upon the decease of the testator a life

estate in the Green-street house vested in her, which was liable to be defeated by her remarriage. As she did not remarry, her title to that property was not defeated; and as it was not required for the payment of the testator's debts, she was entitled during her life to its use, management, and income. The devise under the first clause was not of so much of the income as she might need, but of the entire use and income, without reservation or condition, if she remained unmarried. Her right to use the principal, or to encroach upon the remainderman's interest, was dependent upon her needs; but her right to the use of the property and to its income as a life tenant was absolute and unconditional. *Burleigh* v. *Clough*, 52 N. H. 267; *Langley* v. *Farmington*, 66 N. H. 431; *Tilton* v. *Tilton*, 70 N. H. 325. Nor is a different result reached when the entire will and all competent evidence of the testator's intention is considered. There is no necessary inconsistency between this construction and the third clause of the will. Having given the Green-street house to his wife for life, the testator devised the remainder to Henry. Though he does not use the word "remainder," or employ any other expression qualifying or limiting the devise to Henry, it is apparent that in the third clause he was disposing of the property remaining after the termination of the life estate created by the first clause.

It is argued, however, that the provision in the third clause, "that my said wife shall have the privilege of a home there in case she desires it during her natural life," shows that the testator did not understand that he had already given her a life estate in the same property. But he may have desired to provide a home for her in the event of her remarriage, when her estate as life tenant would terminate and Henry's right to the exclusive occupation as owner of the fee would begin; and to provide for that contingency he may have made the provision above quoted. Such a construction would avoid the conflict suggested and give effect to all parts of the will. *Hall* v. *Hall*, 27 N. H. 275, 287. But whatever conclusion speculation may lead to, in regard to the reason for this provision in the will, the preponderance of all the legitimate evidence furnished by the case makes it reasonably certain, that the testator's general purpose to provide liberally for his wife, and to invest her with a life estate in all his property, was not abandoned when, in the preparation of his will, he reached the third clause. If any so-called rule of construction would lead to that result, so far as the Green-street house is concerned, it has been repudiated in this state, where the testator's intention, proved by competent evidence, is the controlling fact in the construction of his will. *Sanborn* v. *Sanborn*, 62 N. H. 631.

As the widow had a life estate in the house in question, Henry's

occupation of it, if rightful, was authorized by her, not as one of the executors, but as a devisee under the will; and if he is chargeable with the rent for such occupation, it is plain he is not so chargeable as an executor of his father's estate. As a tenant, he may be under obligation to account for the rent of the Green-street house to the administrator of his mother's estate, but not to his father's estate, which has no reversionary interest in the income. As the mother's estate is not represented in this proceeding, the question of Henry's liability to her estate for the rent cannot now be decided. Not being chargeable with the rent of the house as executor, he cannot be credited in that capacity with money expended for taxes, repairs, etc. These are matters to be determined on an accounting with his mother's estate.

In the third case Ellen asks for a construction of the third clause of the will, in which Henry is required to furnish her a home in the Green-street house " in case she remains single and desires to have a home there." This right or privilege is unlimited as to duration, provided she remains single. The absence of any language in the will indicating that the testator intended to give Ellen a right to a home for a less term than her life, is evidence that he had no such intention, which is not overcome by a consideration of other competent evidence bearing upon the question.

It is also necessary to decide what meaning the testator attached to the word "home." Does it mean merely a place for shelter, and if so, in what part of the house is it to be located and of how many rooms is it to consist? Or does it include the right of the daughter to occupy the entire house as a member of Henry's family and to be supported at his table? If the latter construction is adopted, it must be assumed that the testator intended to impose a duty upon Henry, the performance of which might, and probably would, entail expenses upon him greater than the value of the house itself. As its value is stated to be $3,500, and as it is chargeable with the payment of $1,000 to the estate, it is not probable that the testator also intended to charge the support of his daughter upon Henry during her life. At the death of the testator she was about twenty-nine years of age, and it is not difficult to demonstrate that the present worth of the devise to Henry, if charged with the support of his sister so long as she might be expected to live, would be of little or no value. Without other evidence than what is furnished by the case, it is unreasonable to find that the testator intended such a result. It is presumed that he intended some pecuniary benefit to accrue to his son from the provisions of his will.

The provision for a home for the daughter in the Green-street

house was intended to afford her such reasonable accommodations for a home as she might desire to enjoy there in connection with, but not as a member of, Henry's family. *Gibson* v. *Taylor,* 6 Gray 310. What part of the house she may occupy alone, and what part jointly with Henry, are questions of reasonable user, to be determined at the trial term in view of all the circumstances.

In consequence of the foregoing views the decree of the superior court is vacated.

*Case discharged.*

All concurred.

After the filing of the opinion in the original case the appellants obtained an amendment of the case by adding the following facts: The executor's account shows that all the income and more than $1,000 of the principal of the estate were expended for the support of the widow. This sum was made up from the proceeds of the sale of real estate, and sums advanced by Henry out of his own funds for which he charged the estate in the account. Before the trial in the superior court it was agreed that the expenditures were reasonably made for the support of the widow, and that they should be allowed. If Henry had paid a reasonable rent to his mother for the use of the Green-street house, the necessity for an expenditure of an equal amount of the principal of the estate for her support would have been avoided. She managed the property while she lived. Upon the filing of this amendment the appellants moved for a rehearing.

*Samuel C. Eastman* and *Leach, Stevens & Couch,* for the motion.

*Fred H. Gould* and *Martin & Howe,* opposed.

WALKER, J. It has been decided that the devise to the widow of the use and income of all the testator's estate during her life vested in her an absolute life estate in the Green-street house. It follows necessarily that she had the right, not as executrix, but in her private capacity, to dispose of the occupation of the house as she saw fit, as against her co-executor; that is, to rent it to such parties and at such rental as might be agreeable to her, or not to rent it at all. As a devisee, she was not bound to rent it at a reasonable rent. She did not accept the estate upon the condition or covenant that she would obtain a reasonable income from the property for her support, before resorting to the principal for that purpose. Nor did her right to encroach upon the principal of the estate depend upon her using all means to derive a large income

from the property in her possession, or upon her exercise of expert business ability in renting the Green-street house.

The entire estate passed to her private possession and control, which she was entitled to exercise during her life. It is certain that her co-executor, Henry, had no right to interfere with her management of the property. As executor, he could not have prevented her from renting the house to A for a nominal rent, or have interfered in any way with the trade between her and A, on the ground that he was entirely irresponsible, or on any other ground. The title to the property came to her from the testator; it did not vest in the executors, and in that capacity they had no control of it. If she had committed waste upon the property, the remainderman, but not her co-executor, would have had ground for complaint.

Having, therefore, the undoubted right to rent the property to A from whom she received no rent, how could Henry as executor be charged with a rental which the court might find to be reasonable? If this means of her support failed, temporarily or permanently, she was entitled to use enough of the principal to relieve her wants. But that would not make her co-executor liable for so much of the principal used by her as would equal a reasonable rental of the Green-street house. If as executor it had been his duty to rent the house, and on account of his breach of trust no rent had been realized, he might be chargeable with the amount of principal used by her on that account. Unless he is guilty of some breach of trust in his capacity as executor, it is not perceived upon what principle he would be bound, in the settlement of his account, to charge himself with any part of the principal which she deemed it necessary to use for her comfort.

Generally, an executor or administrator is authorized to receive the rents and profits of the real estate of the testator or intestate only in case the estate is insolvent. Where a testator provided in his will that after the payment of debts and legacies the residue of his real estate should be sold by his executor and the proceeds thereof be equally divided among his children, and there was sufficient personal property to pay debts, legacies, and expenses of administration, the estate not being administered in the insolvent course and the executor never having sold any portion of the real estate, it was held that the sureties in such executor's bond could not be holden to pay rents and profits of the real estate of the testator. *Gregg v. Currier*, 36 N. H. 200; *Lucy v. Lucy*, 55 N. H. 9; *Lane v. Thompson*, 43 N. H. 320; 2 Woern. Admin., s. 513. In *Gregg v. Currier, supra*, it is said: "Not only was it no part of the duty of the executor, in his official capacity, to receive those rents and profits, but he had no right to intermeddle with

them, unless as agent of those heirs. If he collected and appropriated them, without their authority or with it, he was personally, and his individual estate may still be, responsible; but he was not bound to settle for them in his administration account, and therefore the sureties upon his bond are not answerable for them." It follows that if Henry, assuming to act as executor, had collected the rent of the Green-street house, he could not on general principles have been charged with the same on his administration account. He would hold the fund as agent or trustee of his mother, to whom alone he would be accountable. Nor does the fact that he, and not a third party, was the tenant change the principle of his accountability in this proceeeding.

But it is said that if Henry had paid a reasonable sum as rent to his mother, there would have been no necessity for her using an equal amount of the principal, and that therefore he must account to his father's estate for that sum, as so much of the principal misappropriated by him as executor. This argument assumes as its basis that he held the entire estate after the payment of debts and expenses of administration as executor, coupled with a trust to so manage, invest, and control the property, as to produce from it a reasonable income for the support of the widow. In other words, it imposes upon him, as executor of his father's estate, duties which he could only perform as a trustee for the legatees under the will. He was made simply a bare executor without power, after the payment of debts, during the life of the widow. The title to the real estate vested upon the decease of the testator in the widow for life, with remainder to the residuary legatees. What "use" she should make of the real estate under the will, what "income" she should derive therefrom, whether reasonable or otherwise, and when such "use and income" should be deemed insufficient for her "comfortable support," were questions not left to the determination of Henry in either his official or private capacity. Whether the residuary legatees might have interfered to prevent her from squandering or misappropriating the principal, or whether they may not now have some remedy upon that ground against her estate (*Healey* v. *Toppan*, 45 N. H. 243, 262), are questions not material in the present case. As Henry had no legal right to manage the real estate, or to interfere with the life tenant's management of it, or to determine for her whether at any time she was entitled to use a part of the principal for her support, he was guilty of no breach of his duty as executor, if she used more of the principal than she was entitled to. The fact is found that she managed the estate, which is in accordance with the apparent intention of the testator. *Langley* v. *Farmington*, 66 N. H. 431. It was not his purpose to make Henry a guardian

over her, or to constitute him a trustee of the estate for the benefit of the widow and the residuary legatees.   During her life she was to have "the use and income of all my estate, real, personal, and mixed, . . . and to enjoy the same for and during her natural life, . . . and in case the use and income shall not be sufficient for the comfortable support of my said wife, then my will is that she shall use so much of the principal of my estate as she may think sufficient for that purpose." It cannot be inferred from this provision of the will that Henry was to determine when the use and income were insufficient for her comfortable support, and to limit her to so much of the principal as he might think sufficient for her maintenance.   But unless he had legal authority of that character which he could exercise and was bound to exercise in the performance of his duties as executor, he cannot be held responsible for her overdraft, if any, upon the principal. Her discretion as life tenant is not the discretion of her co-executor, for which he is liable to account in the probate court.   Whether, therefore, she used more of the principal of the real estate than was necessary or reasonable for her support is immaterial in this proceeding.

Henry is entitled to reimbursement for money which he advanced to her for her support from his private funds if the same was reasonably necessary for her support.   The burden was upon him to show that fact to entitle him to credit on that account.   Furnishing her with money which was not necessary for her support, would not create a valid claim against Charles' estate, though it might constitute a debt against her estate.   But it appears from the case that the parties agreed that the expenditures were reasonably made for her support.   If this agreement relates to Henry's private claim, and is not modified or cancelled for sufficient cause shown upon a further hearing in the trial court, he will be entitled to credit therefor.   If he is owing his mother's estate for the rent of the Green-street house, her estate is entitled to recover it; and if the fact is that she was not warranted in her use and appropriation of the principal, the residuary legatees may obtain relief in an action against her estate.

If Henry had agreed with his mother to pay to his father's estate so much of what might be deemed the reasonable rent of the house occupied by him as would equal the amount of principal used by her, it might be his duty to account for the rent in this proceeding.   But there is no evidence in this case showing what the arrangement was between them in regard to the rent; and to charge Henry officially with a reasonable rental not exceeding $1,000 (the amount of the principal used by his mother) would be to judicially make a new contract for the parties, in order to charge Henry with funds or with the real estate

belonging to his father's estate, of which he had no control as executor or otherwise, and of which the widow as life tenant had the entire management, accountable only to the residuary legatees. The defendants' contention rests on the false assumption that it was the duty of Henry as executor to manage the property of the estate, the uncontrolled use and income of which, so far as he was concerned, was vested by the testator's will in the widow, and to restrain within reasonable limits her discretion in the use of the principal. The will furnishes no evidence that the testator intended to make such a disposition of his estate.

As, therefore, what Henry advanced for the support of his mother appears to be a proper charge upon the principal, he should be credited with the same; and as he is not accountable as executor for the rent of the Green-street house, the order charging him with a reasonable sum as rent is reversed.

*Motion for rehearing denied.*

All concurred.