In the Matter of the Accounting of William G. Tracy et al., as Executors of and Trustees under the Will of George N. Kennedy, Deceased, Appellants.

Syracuse University et al., Respondents.

1. Transfer Tax upon Trust Estates and Estates for Life and in Remainder — Payable from Principal of Such Estates. Under the provisions of the Taxable Transfer Law, relating to the appraisal of property subject to transfer taxes (Tax Law, § 230; L. 1896, ch. 908, as amd. by L. 1897, ch. 6; L. 1899, ch. 76; L. 1900, ch. 658), the transfer taxes, computed as therein directed, and imposed upon trust estates and estates for life and in remainder, created by will, are to be paid from the principal of such trusts and life estates.

2. Annuities — How Transfer Taxes Thereon Should Be Computed and Paid. In fixing the transfer tax upon annuities created by will the probable duration of the annuitant's life should be ascertained in the manner pointed out by section 230, under the rule and standard

of mortality employed by the superintendent of insurance in ascertaining the value of policies of life insurance and annuities; and upon the value of the annuity so determined the amount of the transfer tax should be computed and this amount becomes payable forthwith out of the principal of the fund set aside for creating the annuity; where such fund happens to be the residuary estate of the testator the tax paid upon the annuity is returned to the residuary estate by deducting from each annual payment of the annuity the proportionate part of such tax to be ascertained by dividing the amount of the tax paid by the number of years the annuity will probably continue.

3. ANNUITY TO SERVANT IN REWARD OF PAST SERVICES AND SERVICES TO BE PERFORMED FOR TESTATOR'S DAUGHTER — SHOULD NOT BE DEDUCTED FROM WAGES DIRECTED TO BE PAID TO SERVANT. Where testator bequeathed to a servant an annuity to be paid out of his residuary estate for and during the life of the annuitant "provided he remain with and serve my daughter  *  *  *  as faithfully as for years he has served me," and directed that if the annuitant should leave the service of said daughter, such annuity should cease, and that so long as he should remain in the service of such daughter the executors of testator should pay him a reasonable compensation for his services in addition to the annuity; a provision of the surrogate's decree, entered upon the judicial settlement of the accounts of the executors, directing the payment of the annuity by deducting the same from the wages of the annuitant, paid to him as servant, is irregular and unwarranted, since the annuity is based upon the long and faithful services of the annuitant and is entirely distinct from the matter of wages which were to be paid him by the executors if he remained in the service of testator's daughter.

4. TAXES AND OTHER CHARGES UPON REAL ESTATE DEVISED TO TESTATOR'S DAUGHTER FOR LIFE — TO BE PAID FROM RESIDUARY ESTATE WHEN TESTATOR'S INTENTION IS CLEAR. Where testator directed his executors to pay all taxes assessed upon a dwelling house devised to his daughter for life, and to keep the premises in repair and pay the insurance thereon from his estate, and there is no language indicating that such charges should be paid from the income of his personal property, the charges should be paid out of the residuary estate, and a provision of the surrogate's decree directing them to be paid from the income of the personal property is erroneous.

*Matter of Tracy,* 87 App. Div. 215, reversed.

(Argued November 15, 1904; decided November 29, 1904.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered September 29, 1903, which affirmed a decree of the Onondaga

County Surrogate's Court settling the accounts of the executors and trustees herein.

The facts, so far as material, are stated in the opinion.

*James G. Tracy* for appellants. The state transfer tax assessed upon the life estates under said will should be charged against and paid out of the principal of the trust funds respectively, and not out of the income passing to the beneficiaries. (*Matter of Hoyt*, 44 Misc. Rep. 75; *Matter of Vanderbilt*, 172 N. Y. 69; *Matter of Hoyt*, 37 Misc. Rep. 720; *Matter of John*, 6 Dem. 146; *Magoun* v. *Trust Co.*, 170 U. S. 283; *Knowlton* v. *Moore*, 178 U. S. 41.) The taxes assessed under the War Revenue Tax Act should be paid out of capital. (*Gribble* v. *Webber*, L. R. [1 Ch. 1896] 916.) The taxes, insurance and repairs of the Genesee street property should be charged to and paid out of principal and not out of income. (*Clark* v. *Clark*, 145 N. Y. 476.)

*John W. Church*, for Syracuse University, respondent. The taxes on the life estates assessed under the State Transfer Tax Law and the United States War Revenue Tax Law should be deducted from the income, rents, legacies, and distributive shares to which each of said life tenants are entitled before any part of the same is paid to them. (*Matter of Tracy*, 87 App. Div. 215; *Matter of Brez*, 172 N. Y. 609; *Matter of Kennedy*, 93 App. Div. 27; *Matter of Vanderbilt*, 172 N. Y. 69; *Knowlton* v. *Moore*, 178 U. S. 41; *Billings* v. *Illinois*, 188 U. S. 97.) The whole of the state tax of $146.34 should be deducted from the annuity of James Rohm before any portion of it is paid to him. (*Matter of Tracy*, 87 App. Div. 215; *Matter of Vanderbilt*, 172 N. Y. 69; *Matter of Kennedy*, 93 App. Div. 27; *Matter of Brez*, 172 N. Y. 609.) The taxes, insurance and repairs on the homestead, No. 601 West Genesee street, should be paid out of income and not out of principal. (*De Witt* v. *Cooper*, 18 Hun, 67; *Matter of Tracy*, 87 App. Div. 215; *Matter of Albertson*, 113 N. Y. 434; *Woodward* v. *James*, 115 N. Y. 346; *Clark* v. *Clark*, 145

N. Y. 481; *Chamberlin* v. *Gleason*, 163 N. Y. 214; *Stevens* v. *Melcher*, 152 N. Y. 551.)

*Oliver D. Burden*, special guardian, for Eunice Standart, respondent. The taxes, insurance and repairs of the Genesee street property should be paid out of income. (*Cairns* v. *Chabert*, 3 Edw. Ch. 312; *Clarke* v. *Clarke*, 8 Misc. Rep. 342; *Matter of Albertson*, 113 N. Y. 434; *Woodward* v. *James*, 115 N. Y. 346.) The income and legacies of the life tenants and legatees should pay the whole tax as decreed. (*Matter of Vanderbilt*, 172 N. Y. 70; *Matter of Brez*, 172 N. Y. 609; *Matter of Tracy*, 87 App. Div. 216.)

BARTLETT, J. The executors and trustees under the last will and testament of George N. Kennedy, deceased, attack the decree of the Surrogate's Court of Onondaga county, entered upon the judicial settlement of their accounts, in three particulars, to wit:

(1) Wherein it adjudges that the taxes on life estates, created by the will, assessed under the State Transfer Tax Law and the United States War Revenue Tax Law, should be deducted from the income and rents, to which each of said life tenants were respectively entitled, before any part of the same should be paid to them.

(2) Wherein it is adjudged that out of the income of the personal property of the deceased, now in the hands of said executors, they pay to James Rohm the sum of $350.00, for and on account of his annuity, from the death of the testator up to the 4th day of November, 1902, from which shall be deducted the state tax of $146.34, and that said annuity be paid by deducting the same from the wages of said Rohm, paid to him by said executors, amounting to $65.00 a month.

(3) Wherein it is adjudged that the taxes, repairs and insurance upon the residence No. 601 West Genesee street, in the city of Syracuse, paid by the executors up to December 1st, 1902, shall be charged against and paid out of the income of the personal property of the deceased.

The will is lengthy, containing numerous provisions, but its general scheme can be briefly stated. The entire property, real and personal, after the payment of debts and legacies, is converted into trust estates for the benefit of life tenants and remaindermen, all of the latter being contingent, depending upon the status at the death of the life tenant, except the defendant, the Syracuse University, which takes its estate in remainder upon the death of Elizabeth K. Freeman, a daughter of the testator.

In the second subdivision of the will the testator provides in part as follows : "*First*, out of my estate remaining I give and devise to (naming the executors and trustees) eighty thousand dollars as a trust estate and in trust for my daughter, Jessie B. Kennedy, to collect and receive the rents, issues and profits arising therefrom and to pay the same over to the said Jessie B. and disburse the same for her support and maintenance during her natural life. In providing for the *corpus* of this estate I direct that same shall be the first charge upon my estate and shall be made up from such securities as I shall leave of my estate as are of the most intrinsic value and such as yield the largest rate of interest or pay the largest dividend, to the end that said trust estate shall yield the beneficiary, said Jessie B., the largest income for her support and maintenance. * * * The trust estate above provided for I make the first lien and charge upon my whole estate, both real and personal, and is to be first provided for out of my said estate in the first instance."

In this connection the testator expresses the wish that his daughter Jessie B. should not marry. In the event, however, that she marries and dies leaving lawful issue, the sum of thirty thousand dollars of the *corpus* of the trust fund is to be divided equally between said issue. In the event of her dying without lawful issue, the *corpus* of the trust is to be added to the residuary estate.

In the twenty-second subdivision of the will the residue of the estate is given and devised to the trustees in trust, to collect and receive the rents, issues and profits and pay one-half

thereof over to said Jessie B. semi-annually for her support and maintenance during life or so long as she remains unmarried. Upon her marriage or death one-half of said residuary estate to be paid to certain persons named, or to their respective children, if any have died. The rents, income and profits from the other half of the residuary estate are payable one-third to the testator's daughter, Elizabeth K. Freeman, one-third to the children of Dr. Nathan R. Tefft living at the time of testator's death, for and during the life of his daughter, Elizabeth K. Freeman, and if all of the children die before the last named, the third of the income is to be added to the *corpus* of the trust estate during the life of said Elizabeth K. Freeman. The remaining third of the income is directed to be paid over to Margaret D. Kennedy and her daughter, Louise Green, equally during the life of said Elizabeth K. Freeman. If either Margaret or Louise shall die before Elizabeth K. Freeman, the survivor takes and receives the whole third of the income.

The testator stated in this connection: "The last foregoing provision in behalf of said Margaret D. and Louise is made as an additional inducement for them and each of them to kindly nurture and properly care for and protect the interests and promote the welfare and happiness of my daughter, said Jessie B. Kennedy."

Upon the death of Elizabeth K. Freeman the testator disposes of this half of the residuary estate in three equal parts. Two of these thirds are to be paid to certain individuals named, or to their issue in case they do not survive. The remaining third, after the death of said Elizabeth K. Freeman, is to be paid to the defendant, the Syracuse University. It will thus be observed that all of the remainders are contingent except the one passing to the defendant, the Syracuse University, as above stated.

In subdivision third of the will the testator provided as follows: "I give to my said daughter, Jessie B., the use of my dwelling house or homestead, including the stable on the corner of Genesee and Plum streets, in the City of Syracuse,

for and during her natural life, provided she shall desire or it shall be thought for her interest by my said executors to occupy the same as a dwelling house for herself and those whom she may select to occupy the same with her as her home."

In this connection the testator further provides in subdivision twenty-fourth, as follows : " During the time my said daughter, Jessie B., shall occupy my dwelling house as hereinbefore provided, I direct my said executors to pay all taxes which for any purpose may be levied thereon and that they also keep the premises in repair at the cost of and from my estate, as well also that they pay any insurance thereon."

Subdivision sixteenth reads as follows : " I give to my faithful servant, James Rohm, an annuity of three hundred dollars to be paid to him semi-annually out of my estate for and during his natural life, provided that he remain with and serve my said daughter, Jessie B., as faithfully as for years he has served me.   If for any reason he shall leave the service of said Jessie during her lifetime such annuity shall cease ; so long as he shall remain in the service of Jessie I direct that he be paid by my executors a reasonable compensation for his services in addition to said sum."

It was manifestly the primary idea of the testator, in creating the testamentary scheme here disclosed, to provide for his daughter, Jessie B.   The reason for testator's great solicitude for her is expressed in subdivision seventh of the will as follows :

" My daughter, Jessie B., is greatly afflicted, being blind ; her future care and happiness is the source of great anxiety to me and I would guard her as far as possible from the contingencies of life, which in her case may be more serious because of her great infirmity.   To secure to her, as far as possible, her enjoyment of life, I enjoin upon the said Margaret D. Kennedy and the said Louise Green that they each look over and protect the said Jessie B. in all reasonable ways against ills which she may encounter in her life and thereby secure to

her as much happiness as is vouchsafed to any of us in this world."

In the previous subdivisions of the will the testator had given to said Margaret D. Kennedy and Louise Green the sum of thirty thousand dollars each, and as above pointed out they receive one-third of the rents, issues and profits of one-half of the residuary estate during the life of testator's daughter, Elizabeth K. Freeman.

The testator died September 7th, 1901, and consequently the State Transfer Tax Law as it existed after the amendments of 1899 and 1900 is applicable to this case. These amendments are sought to supply what were deemed omissions in the Transfer Tax Law as it then stood, as some of the courts had decided that the transfer tax on life estates was payable out of income and no tax could be imposed on contingent remainders. (*Matter of Johnson*, 6 Demarest, 146; *Matter of Roosevelt*, 143 N. Y. 120.)

The present appeal is controlled by the Transfer Tax Law (Laws of 1896, chapter 908, § 230), as amended by chapter 76 of the Laws of 1899 and chapter 658 of the Laws of 1900. The material portions of section 230 read as follows: " Whenever a transfer of property is made, upon which there is, or in any contingency there may be, a tax imposed, such property shall be appraised at its clear market value immediately upon such transfer, or as soon thereafter as practicable. The value of every future or limited estate, income, interest or annuity dependent upon any life or lives in being, shall be determined by the rule, method and standard of mortality and value employed by the superintendent of insurance in ascertaining the value of policies of life insurance and annuities for the determination of liabilities of life insurance companies, except that the rate of interest for making such computation shall be five per centum per annum. * * * When property is transferred in trust or otherwise, and the rights, interests or estates of the transferees are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, a tax shall

be imposed upon said transfer at the highest rate which, on the happenings of any of the said contingencies or conditions, would be possible under the provisions of this article, and such tax so imposed shall be due and payable forthwith by the executors or trustees *out of the property transferred.*"

It thus appears that whenever a transfer of property is made, upon which there is, or by any contingency there may be, a tax imposed, the property is to be properly appraised at its clear market value and the transfer tax is due and payable forthwith *out of the property transferred.*

In *Matter of Vanderbilt* (172 N. Y. 69) this court construed section 230 of the Transfer Tax Law, as affecting the payment of the tax upon contingent remainders, and held that the tax was payable forthwith out of the property transferred. Judge HAIGHT, writing for the court, said: "It seems to me clear that the legislature by this amendment intended to change the law upon the subject and to make the transfer tax upon property transferred in trust payable forthwith. The tax is not required to be paid by the conditional transferee, for, by the provision of the statute, it is 'to be paid out of the property transferred.' So that whoever may ultimately take the property takes that which remains after the payment of the tax."

As our decision in *Matter of Vanderbilt* (*supra*) dealt only with a contingent remainder, this case, technically speaking, is not strictly in point, but the principle announced therein is necessarily involved in life estates created by trusts.

In the case at bar it is the duty of the executors and trustees to ascertain the value of the respective life estates and estates in remainder in the manner pointed out by section 230; and having done this, they should compute the transfer tax and pay the same forthwith out of the property transferred. The result is that the life tenant loses, during the continuance of his estate, the interest upon the *corpus* of the trust so paid out, and eventually the remainderman receives his estate diminished by the amount of said payment.

Whether this mode of taxation works out exact justice as

between the life tenant and the remainderman is a question with which the court is not concerned.

As we read the statute, the legislative intention is clear that the transfer tax shall be paid out of the *corpus* of the trust estates, and not out of the income.

It, therefore, follows that the transfer taxes imposed upon the estates for life and in remainder, created by the eighty-thousand-dollar trust, under which testator's daughter, Jessie B., is the life tenant, are payable out of the principal of that trust.

Also that the transfer taxes imposed upon the estates for life and in remainder, in the various trusts carved out of the residuary estate, are payable from the principal of said trusts respectively.

We will now consider the second provision of the decree, from which appeal is taken, in reference to the annuity of three hundred dollars for the benefit of James Rohm, payable semi-annually. Annuities are expressly referred to by section 230, as already quoted. The manner in which this annuity is dealt with in the decree of the learned surrogate is unsupported by the statute. The probable duration of the annuitant's life should be ascertained in the manner pointed out by section 230, which is under the rule, method and standard of mortality and value employed by the superintendent of insurance in ascertaining the value of policies of life insurance and annuities, etc. This fact being ascertained, the amount of the transfer tax is computed thereon and becomes forthwith payable out of the fund set aside for creating the annuity. (In this case it happens to be the residuary estate.)

The method of returning to the residuary estate the tax so paid by the trustees is as follows : Take for illustration an annuitant whose probable duration of life is ten years. The trustees would deduct from each annual payment as made one-tenth of the tax and restore it to the residuary estate.

In the case at bar the death of the annuitant was suggested on the argument as having taken place since that of the testator. Any portion of the transfer tax not restored to the

estate by the process indicated at the time of the annuitant's death would be a loss which the residuary estate must sustain.

The payment of the annuity by deducting the same from the wages of said Rohm, paid to him by said executors, amounting to sixty-five dollars a month, as provided in the surrogate's decree, is wholly irregular. The annuity was based on the long and faithful services of the annuitant, and is entirely distinct from the matter of wages which were to be paid him by the executors if he remained in the service of the daughter, Jessie B.

This brings us to the consideration of the remaining question, as to whether the amount paid for taxes, repairs and insurance upon the residence, No. 601 West Genesee street, in the city of Syracuse, is properly chargeable upon the income of the personal property of the deceased.

In this connection subdivisions three and twenty-four of the will must be read together. The latter subdivision provides: "During the time my said daughter, Jessie B. shall occupy my dwelling house as hereinbefore provided, I direct my said executors to pay all taxes which for any purpose may be levied thereon, and that they also keep the premises in repair at the cost of and from my estate, as well also that they pay any insurance thereon."

The testator here indicates the clear intention of making these various disbursements a charge upon his estate, and there is no language indicating that the executors and trustees are to pay the same out of the income of his personal property, as provided in the surrogate's decree.

It is undoubtedly the general rule that the life tenant must pay taxes, insurance and ordinary repairs, but when the testator manifests the contrary intention it will govern. (*Clarke* v. *Clarke*, 145 N. Y. 476.)

The estate that the testator referred to, in view of the other provisions of his will, is the residuary fund.

We are of opinion that these disbursements from time to time are payable out of the *corpus* of that estate.

It follows that the order of the Appellate Division should

be reversed, with costs to the appellants in all the courts, to be paid out of the estate, and that the decree of the surrogate should be reversed and modified as to the three provisions involved in this appeal, and as so modified affirmed, and the proceeding is remitted to the Surrogate's Court, to be amended so as to conform to the views of the court, as expressed in this opinion.

CULLEN, Ch. J., GRAY, O'BRIEN, HAIGHT, VANN and WERNER, JJ., concur.

Judgment accordingly.