### In re WILCOX'S ESTATE.

(Surrogate's Court, Monroe County. May, 1909.)

1. TAXATION (§ 905*)—TRANSFER TAX—ENFORCEMENT.

Testator left his real estate, which in part comprised several farms, to his widow for life, with remainder to his brothers and sisters, share and share alike, providing that, if any of them died without issue, the surviving brothers and sisters should take their respective shares. One of the sisters died, leaving a child surviving her. *Held*, that under the statute the whole property was subject to a lien for the payment of the whole transfer tax, and that, if no money was forthcoming to pay the same, it was the duty of the executor to pay it, and the court would direct the sale of so much of the property as might be necessary to raise the requisite amount.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 905.*]

2. SUBROGATION (§ 23*) — TRANSFER TAX—PAYMENT BY MISTAKE—REIMBURSEMENT.

Where a life tenant has through mistake as to the law advanced the money to pay a portion of the transfer tax, which was claimed to be chargeable to her, she was entitled to be repaid the amount, with interest, being subrogated to the rights of the state.

[Ed. Note.—For other cases, see Subrogation, Dec. Dig. § 23.*]

In the matter of the estate of Sylvester Wilcox, deceased. Application by Marion Wilcox, as executrix, for leave to sell real estate to pay a transfer tax. Application granted.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Sylvester Wilcox by his will left his real estate, with a life use, to his widow, Marion Wilcox, and the remainder to his four brothers and sisters, share and share alike, with the provision that, if any of his brothers and sisters died without issue, the surviving brothers and sisters should take their respective shares. The life tenant paid her transfer tax. This is an application by the executrix to sell each separate remainder in the real estate, or so much thereof as may be necessary to pay the transfer tax assessed upon the remainders.

Martin Davis, for petitioner.

Albert H. Stearns, for respondent Rich.

Stephen J. Warren, for respondent Hubbell.

BROWN, S.   In the first instance I conceive that the statute intends that the transfer tax on real property given in trust or otherwise, whereby a life tenant has an interest therein, with remainder over to other people, coupled with the fact that there is some contingency that may happen, whereby the right of any of the beneficiaries in that particular fund is created, defeated, extended, or abridged, is to be paid forthwith after the fixing of the tax, by the executor, out of the corpus of the fund or property transferred, not necessarily by the whole will, but transferred in the contingency that the life tenant and the remaindermen are both interested in one particular piece of property or aggregation of property; that in a case where there were separate funds in trust, or separate farms, separately given under these circumstances to a different aggregation of people as life tenants and remaindermen, each separate aggregation would have that property chargeable with the amount of the tax, and from that property the tax should be paid, so that the life tenant's income on that property is decreased, inasmuch as the amount of that tax is taken out of the fund, and the remainderman's value is decreased by just the amount of that tax. That seems to me to be perfectly clear from the decision of the Matter of Tracy, 179 N. Y. 501, 72 N. E. 519. There they show that the life tenant was not obliged to pay the tax herself, but that it came out of the corpus of the fund, and, as there were different funds, it is held to be chargeable against the respective funds, and no distinction was made between a fund that was contingent and a fund that was vested. It makes no distinction as long as there was a fund whereby there was a contingency and a portion of that went to a contingent interest and the other absolutely went to the Syracuse University. It made no difference that the fund itself was to be taxed and out of the fund the tax was to be paid.

That applies to this case exactly. Here is a fund—that is, the farms of the testator—and the widow is given a life use thereof, and upon her death he gives it, in the first instance, absolutely to four, one brother and three sisters, share and share alike; then he makes a possible contingency in the case of the death of any one of those, and provides how it shall pass in that case. Now, in this instance, by virtue of law one of these parties before this court takes his mother's share. Therefore he gets a vested remainder similar to the University of Syracuse in the Tracy Case. The others are contingent, awaiting what may happen in the future. Now, that is all one fund, one trust, if you may call it a trust. Of course, it isn't exactly a trust; but it is the "other-

wise" referred to in the statute. Therefore my conclusion is that the property of this fund is subject to a lien for the payment of the whole tax, and that, if there is no money forthcoming to pay the whole tax, then it is the duty of the executor to pay the same, and the court directs the sale of so much of the whole of that property as may be necessary to raise the fund to pay the whole tax; and it appearing that the widow, by a misconception of the law in this particular case, has advanced the money to pay that which was said to be chargeable to her, upon such sale the whole tax must be considered as to be paid out of sufficient property to make the amount of the whole of the tax, and she be recompensed or repaid the amount that she has paid to the state, she being subrogated to the rights of the state, with interest at 6 per cent. from time of payment to time of repayment.

To have no misunderstanding in future matters that may come before this court, relying on the decision of this case, the court holds that, if in the judgment of the court separate gifts had been made of separate portions of the property, then it would not direct a sale of the whole of the estate, but only of the portions that were affected by that particular portion of the will that made a complete transfer. I will say that I did consider the proposition as to whether I was at liberty to so construe this will as to say that this should be regarded as though the will read thus: "I give to my wife the use of an undivided quarter of all my real estate, and after her death I give the remainder of it to George Hubbell; and I give the use of another undivided quarter to my wife, and upon her death I give the remainder of that quarter to Mrs. Rich," etc.—with the general clause of contingency; but I do not feel that I am at liberty to go so far in construing that will, so as to split up that which the testator gave as a whole gift for life to his wife, with remainder to the four, one brother and three sisters, share and share alike, with contingencies, all provided for in one complete testamentary provision, a unity in itself.

I make this last statement to show that I considered that as a possible ground for splitting up the disposition of property under this will; but I do not feel at liberty to do so, although I think it would be following Surrogate Petty, of Suffolk county, in the Matter of Hoyt, 37 Misc. Rep. 720, 76 N. Y. Supp. 504, but I feel that the Matter of Tracy is so clearly applicable here that we have to regard this gift as a whole, being one particular property, passing under a complete, entire, testamentary disposition. Now, of course, when you come to make the sale, I would have you consider among yourselves what property can be sold to the best advantage to protect the income of the widow, as she really has the first right to consideration here, because it was given by the husband for her to have the first use of it. Therefore, when the property is sold, it is the interest of Sylvester Wilcox in that property that is sold.

Let findings be prepared and decree entered.