In the Matter of the Estate of JOHN MATTHEWS (Sometimes Known as JOHN MATTHEWS, JR.), Deceased.

Surrogate's Court, Nassau County, October 13, 1937.

580

*Milbank, Tweed, Hope & Webb,* for the executor.

*Mitchell, Taylor, Capron & Marsh,* for the petitioner.

*H. H. & W. L. Morse,* for the respondents.

*Thomas K. Patterson,* special guardian.

HOWELL, S. This is a second motion for reargument in the above proceeding. Upon the original application and upon the first reargument the decision of the court sustained the validity of the widow's right of election to take her intestate share as against the provisions of the will.

The testator set up his entire residuary estate in trust for the lives of his wife and mother, to pay the net income to them in equal shares. So that without taking into consideration the further provisions of the will, a trust for the life of the wife was created by which she would receive the net income in one-half of his residuary estate. It was not disputed that such provision would amount to a sum equivalent under the statute to the intestate share and would produce a substantial income; in other words, that the trust was a trust in substance as well as in form. There were, however, further provisions affecting the trust, as follows:

1. The trustee was empowered to invade the principal of the trust in his discretion, in an emergency, for the benefit either of the mother or of the wife.

2. The trustee was empowered to determine what part or parts of the trust *res* should be income and what part or parts should be principal.

3. The trustee was empowered to act without bond.

4. The trustee was empowered at least to some extent to invest in " non-legals."

5. The trustee was directed to pay all taxes, State and Federal, out of the trust income, and not to amortize the same against the principal.

Considering these provisions, it was quite clear that the trust did not comply with section 111 of the Decedent Estate Law and with section 21 of the Personal Property Law.

In *Matter of Curley* (245 App. Div. 255; affd. without opinion, 269 N. Y. 548) the Appellate Division in this Department had clearly stated in its opinion that a trust sufficient to prevent the right of election must be a trust which complied with those statutes. As the affirmance by the Court of Appeals was without opinion, if left open the question of that court's grounds for its affirmance. However, in this Department the decision of the Appellate Division was determinative and was followed by this court as it was by other Surrogates' Courts. (See *Matter of Bommer*, 159 Misc. 511.) Furthermore, it left the situation so doubtful that the effect of the decision as to future cases was removed by the enactment of chapters 234 and 378 of the Laws of 1936, amending sections 18 and 125 of the Decedent Estate Law.

However, since the decision on the first motion for reargument in the instant case, but before the entry of a decree thereon, the Court of Appeals handed down its decision in *Matter of Clark* (275 N. Y. 1), which decision has clarified the situation and brought about the present motion for reargument.

The decision of this court upon the original application and its decision upon the first motion for reargument were based upon the opinion of the Appellate Division in the *Curley* case, in accordance with which, the trust in question was clearly not a trust in compliance with the statutes. The Court of Appeals has now in the *Clark* case held that, by its affirmance of the *Curley* case without opinion, it did not adopt the reasoning of the opinion of the Appellate Division and did not go so far as to decide that the trust must comply with the statutes above referred to. On the contrary, the Court of Appeals said in the *Clark* case that they were controlled in their affirmance of the *Curley* case by the fact that the trust created in that case did not constitute the intestate share.

In the *Clark* case the testator established a trust for the benefit of his wife for her life in one-half of his net estate. He authorized his trustees to invest in securities other than those designated by law as legal investments for trustees, relieved them of giving a bond and authorized them to make distribution in kind at such value as they in their unrestricted discretion should determine. Under the opinion of the Appellate Division in the *Curley* case this would not have constituted a trust in compliance with the

statutes, and the lower court so held following that case. In reversing, the Court of Appeals held that the trust in the *Clark* case, unlike that in the *Curley* case, would necessarily amount to the equivalent of the widow's intestate share, was a trust in substance as well as in form, would yield a substantial income and that the situation was not affected by reason of the provision empowering the trustees to act without bond and to invest in " non-legals." Adverting to the provision of the will authorizing the trustees to make distribution in kind at values fixed by them in their unrestricted discretion the court said that such discretion, although described in the will as " unrestricted," must necessarily be genuine and not arbitrary, and further said (p. 5): " The Surrogate has jurisdiction to direct an equitable distribution and valuation of the assets so as to insure to the widow her intestate share. Nothing in this will indicates an intent by the testator to establish such a trust as will yield little or no income or otherwise ingeniously to deprive the widow of her intestate rights. * * * This will, when fairly read, confers upon the widow all the rights which section 18 of the Decedent Estate Law gives her. There is no way by which the executors and trustees can deprive her of her share. As so interpreted, her rights are preserved and, accordingly, she may not elect."

Turning, then, to the instant case, it is quite clear that the decision in the *Clark* case results in removing items 3 and 4 above referred to, as matters which would result in giving the widow the right to elect. Thus, the power given to the trustee to act without bond and to invest, at least to some extent, in " non-legals " are in that category, as well as the power of the trustee to determine in his discretion what part of the trust shall be income and what part shall be principal. As discretion is there involved, it must be a genuine and not an arbitrary discretion and would prevent a determination which would destroy or invade the intestate share.

It remains, therefore, to determine · whether items 1 and 5, above referred to, still remain sufficient to sustain the widow's right of election.

The first of such items is the power conferred upon the trustee in his absolute discretion, in an emergency, to pay a part of the principal of the trust to the wife or to the mother, the determination of the existence of the emergency to rest in the discretion of the trustee. Here, again, discretion is involved. It is denominated in the will " absolute discretion " which, of course, does not differ from the " unrestricted discretion " conferred by the will in the *Clark* case. Hence, such a discretion must be genuine and may not be arbitrary. There is nothing in the will to indicate an attempt

by the testator by that provision to perpetrate a fraud in setting up a trust for his wife's benefit and then permitting its destruction by the trustee. It would seem that, under the decision in the *Clark* case, the discretion of the trustee would be controlled by the surrogate and could not be exercised in such a way as to destroy or invade the widow's share of the income from the trust to the extent that it would be reduced below the equivalent of her intestate share.

The fifth item, however, differs in that the discretion is mandatory rather than discretionary. The will directs that all taxes, both Federal and State, of whatsoever kind and nature, shall be paid out of the income of the trust and shall not be amortized against the principal. Here, therefore, is an absolute mandatory direction and no exercise of discretion is involved. In the former opinions, and particularly in the opinion upon the decision of the first motion for reargument, this court held that it was within the power of the testator to make such a direction. Obviously, as the court in that opinion pointed out, the testator's direction would not bind the taxing authorities who would have the right to collect the tax from the estate as a whole upon which the statute imposed the obligation; but the testator would, nevertheless, be free to direct that the ultimate burden of the tax should rest elsewhere than where placed by the statute, and hence that it should rest upon the income, rather than upon the principal. This conclusion rested upon the reasoning that a testator having the right to make such gift as he sees fit might make a gift of such portion of the income as might remain after income had been used to defray taxes.

Having concluded as a result of the *Clark* case that none of the other provisions of the will under consideration are such as to confer upon the widow a right of election the question now is whether the provision in question as to payment of taxes is a provision which, when construed in the light of the testator's intention to be gathered from the will as a whole, would result in so reducing the provision for the widow as to give rise to her right to elect to take as against the will. In order to defeat such right of election, the widow is entitled to receive either one-half in value of the net estate, or, in lieu of that, a trust for her benefit in one-half of such net estate for the term of her life. The trust must be for her benefit during her life. (See *Matter of Clark, supra; Matter of Byrnes*, 260 N. Y. 465.) In the event that the provision for her benefit is in the form of a trust, it should be in such form as to assure the payment of the net income for her benefit to the same extent as if the principal of her share had come into her hands outright. (*Matter of Bommer*, 159 Misc. 511, at p. 521.)

Obviously, there are certain proper charges against income which income must legally bear. The question here is whether a charge upon the income of estate taxes, which are by statute a charge upon capital, is so directed by the testator as to result in reducing the provision for the benefit of the wife below that required by the statute in order to defeat her primary right of election, or whether, on the other hand, as was said in the *Clark* case, the will when fairly read confers upon her all the rights given her by the statute and does not permit the executor and trustee to deprive her of that share.

In order to determine this question an examination of the will and the condition of the testator's estate is necessary. The will was made in September, 1933, and the testator died in June, 1935. From the proceedings to fix the New York estate tax it appears that the value of testator's gross estate at the time of his death was $94,834.40, and that the deductible debts and administration expenses total $7,789.28, leaving a net estate before payment of estate taxes valued at $87,045.12.

By his will testator gave his brother a legacy of $1,500, his wife a legacy of $2,500, and his residuary estate, in trust, to pay the net income in equal shares, one-half to his wife and one-half to his mother. The net estate, before payment of legacies, being approximately $87,000, the amount of the estate passing into the trust, after payment of the legacies, would be approximately $83,000. This amount was, of course, subject to the payment of estate taxes. Exactly what those amount to does not appear. It does appear, however, that the New York estate tax was approximately $600, so it may well be assumed that the total estate tax, both New York State and Federal, would approximate $1,000, which would leave the net residuary estate $82,000.

In exercising the right of election, the widow can in no event be entitled to take more than one-half of the net estate after the deduction of debts, funeral and administration expenses, and any estate tax. (Dec. Est. Law, § 18, subd. a.) Consequently, the intestate share of the widow in this estate could not in any event exceed one-half of $86,000, or $43,000. In order to defeat her primary right of election the testator, instead of leaving her that share outright, may leave her a legacy of $2,500 and a provision in trust for her benefit for life of a principal sum equal to the excess between that legacy and her intestate share. (Dec. Est. Law, § 18, subd. d.)

In the present case the testator, in compliance with that section, gave his wife a legacy of $2,500 and a trust for her benefit for life in a principal sum equal to or more than such excess. Her intestate

share was $43,000. She was given a legacy of $2,500. She was, therefore, entitled to the benefit of a trust for life in a principal of $40,500. As noted above, the residuary estate, after payment of legacies, was $82,000, so that the principal of the one-half of which the widow was entitled to the benefit would be $41,000. This is confirmed by the estate tax proceedings showing such principal to be slightly in excess of $41,000. Upon that basis it appears clearly that the trust for the widow's benefit is in a principal sum some few hundred dollars in excess of the minimum requirement of the statute. In the light of general conditions existing at the time the will was made and at the time of testator's death, it may well be assumed that the income from that principal, which the testator could reasonably have anticipated, would not have exceeded five per cent or, perhaps, four per cent, with a return of gross annual income to each of the two trust beneficiaries of less than $2,000, and such income might, indeed, be subject to further deductions properly chargeable by law against income. Indeed, the testator, in paragraph fifth of his will, expressly so provided. He directed his trustee to collect the income, to pay therefrom " all lawful expenses and charges, liens and incumbrances," and to pay the net income remaining in equal shares to his wife and mother. The expression " lawful expenses and charges, liens and incumbrances " must, necessarily, be taken to mean such as by law are charged against income. It is urged that the provision of paragraph seventh of the will should be similarly construed and that, when so construed in connection with the will as a whole, the direction of the testator as to the payment of taxes from income was meant to apply only to taxes lawfully chargeable against income. In support of this contention emphasis is laid upon the fact that the direction is to pay taxes out of the income of the trust *res* and that, therefore, the testator must have had in contemplation taxes arising after the trust should be set up, thereby excluding estate taxes. This argument has considerable cogency. The provision in question upon its face would include estate taxes. Under the statute estate taxes are a charge against capital. As was pointed out in the court's former opinion in this case, the surrogate is, nevertheless, authorized to prorate the tax. (Dec. Est. Law, § 124.) That right to prorate exists, however, " except in a case where a testator otherwise directs in his will." In the absence of such a direction the surrogate may prorate equitably, taking into consideration exemptions and deductions. However, where a trust is created, as in the instant case, with income therefrom payable to one beneficiary for life, remainder over to others, the statute expressly provides that the tax on both the life interest

and the remainder shall be charged against and paid out of principal without apportionment between the life beneficiary and the remainderman.

The effect of section 124 of the Decedent Estate Law, therefore, is as follows:

1. The surrogate may prorate the tax, except in a case where the testator in his will otherwise directs.

2. He may not prorate the tax as between life beneficiary and remainderman in the case of a trust for the benefit of one beneficiary for life, with remainder to others, but in such case the tax is by the statute made a charge against principal.

As appears from the note of the Commission upon the enactment of that section, which note was quoted in the prior opinion in this case, exactly that end was sought to be attained, although the rule established in *Matter of Tracy* (179 N. Y. 501) as to annuities was preserved. (See, also, *Matter of Starr*, 157 Misc. 103.) Hence, under the present statute, the tax upon a trust for the benefit of one for life, with remainder over to others, is a charge against capital which may not be prorated; whereas the tax upon an annuity, although payable out of the fund set aside to pay the annuity, will be amortized out of the annuity installments as the same are paid, the rate of amortization being determined by the life expectancy of the annuitant.

If the surrogate were empowered to prorate the tax in this case many difficulties might be avoided, for, in so doing, he would necessarily take into consideration the value of the widow's trust life estate and allowable exemptions and deductions. It appears from the estate tax proceedings that the value of the widow's life estate was $21,500. Hence, the value of the interest passing to her under the will would be that amount plus the legacy of $2,500, making a total of $24,000. She would be entitled, however, to an exemption of $20,000, leaving the amount of her beneficial interest which would be taxable at $4,000. Under the former Transfer Tax Law that would be the amount taxable to her, and the tax upon that amount would be the only tax she would have to bear. If the estate tax could be prorated in this case it would be equitable to prorate it similarly. The result would be that the portion of the tax chargeable against the widow would be very small and the bulk of the tax would fall upon the remainderman. Indeed, in such a case it appears that the portion of the tax which would be charged against the widow would be so small as not to reduce or impair the equivalent of her intestate share.

As has been pointed out, section 124 of the Decedent Estate Law provides that in such a case the entire tax shall be charged against and paid out of the corpus without apportionment. How-

ever, the right of the surrogate to prorate or apportion does not exist under that statute, " in a case where a testator otherwise directs in his will." It would seem that in this case the testator has otherwise directed in his will by directing the payment of taxes out of income. We are remitted, therefore, to a consideration of the question whether that direction in the will should be construed as applicable to estate taxes when read in the light of a will as a whole, and particularly in connection with the provisions of paragraph fifth thereof. It is apparent from this will that the testator carefully made provision for his wife in accordance with the provisions of subdivision d of section 18 of the Decedent Estate Law. Indeed, we must assume that he knew that if he made less provision for her she would have the right to elect to take against the will. It may also well be assumed that he knew the trust fund for his wife would likely produce an annual income not in excess of $2,000 and, in that event, that amount might be subject to payment of taxes or other charges legally a charge against the income. There being no indication in this will of an intent on the part of the testator ingeniously to defraud his wife or to deprive her of her rights, it does seem difficult to ascribe to him an intention to create for her a trust adequate under the statute and then by his direction as to the payment of taxes out of income to impose upon his wife's income the burden of paying taxes which, by the statute, are a charge against capital, and which would of necessity destroy the effect of the provision he had theretofore made for her.

Furthermore, even if such intention may be ascribed to him, the question remains whether, as is urged, the direction in question for payment out of income of taxes, which are a statutory charge against capital, does not of necessity, directly or indirectly, require the accumulation of income in violation of the statute. (Pers. Prop. Law, § 16.) Apparently no authoritative decision has been found by counsel in this State upon that specific point. As was pointed out in the former opinion herein, *Matter of Chave* (227 App. Div. 554) was not determinative upon that point. On the other hand, *Matter of Tracy* (179 N. Y. 501) involved an annuity, restated the existing law as to annuities, and that has been continued as the law respecting annuities even following the enactment of section 124 of the Decedent Estate Law. In that respect there seems to have been made a distinction between annuities and the case of a trust, with income to one beneficiary for life, with remainder over to others. (See *Matter of Tracy, supra; Matter of Smathers,* 133 Misc. 812, 814.) Indeed, the distinction was apparently in the legislative mind at the time of the enactment of section 124 of the Decedent Estate Law, as is clearly indicated by the Commission's note thereon and the difference in treatment thereunder

of annuities and ordinary life estates with remainder over. In the case of the latter, the Legislature has expressly charged the tax against the corpus without apportionment; whereas, in the case of the former, it remains amortizable under the rule set forth in *Matter of Tracy* (*supra*). In the case of an annuity, a fund must be set aside sufficient to pay it. The tax upon the entire value of the annuity is payable out of the fund thus set aside. The tax having thus been paid, it is amortized upon the basis of the annuitant's life expectancy as the installments of the annuity are paid. However, the annuitant has the legal right to elect to take the value of his annuity outright, in which event the tax upon the entire annuity is deducted from the amount to which the annuitant under his election is entitled.

Consequently, it is urged that an annuity is in effect a legacy, payment of which is deferred, unless the annuitant elects to take at once, and that, consequently, there is no violation of the statute against accumulation of income.

In a case such as the present, however, where there is involved a trust for the payment of income to the beneficiary for life, remainder to others upon her death, a different situation exists. The statute makes the estate tax a charge against the corpus of that trust without apportionment as between life tenant and remainderman. Unquestionably the tax is, therefore, by statute, a charge against capital and is collectible and payable out of capital. The direction of the testator to pay it out of income from the trust corpus, therefore, must be taken to be a direction to reimburse the corpus out of the income to the extent of the tax paid. It is quite obvious in the present case that the accumulation of income over some more or less considerable period would be necessary to accomplish that direction. If we assume the tax to be approximately $1,000, it would necessarily require some period of time to accumulate sufficient income to repay that amount to capital. If a direction to accumulate income is invalid, it is invalid irrespective of the length of time during which accumulation is directed.

A somewhat analogous situation exists where a mortgage upon the corpus of the trust is directed to be paid out of income. After considerable divergence of opinion upon the subject it was finally settled in this State in the case of *Hascall* v. *King* (162 N. Y. 134) that a direction to apply part of the income of a trust to the payment of mortgages thereon resulted in increasing the capital of the estate, and constituted an accumulation of income, which was invalid under the statute.

By parity of reasoning it may be said that the estate tax, being by statute a charge against capital, constituted an incumbrance upon the corpus of the trust, and that, consequently, a direction

to pay such incumbrance out of income would increase the capital of the trust and require an accumulation of income, which would be invalid under the statute. Indeed, by similar reasoning, it was so held in Pennsylvania. (*Matter of Billings Estate*, 268 Penn. St. 71; 110 A. 768.)

In the light of the decision of the Court of Appeals in *Matter of Clark* (*supra*), I am impelled to the conclusion that the testator should not be presumed to have intended by the direction in question either to have directed what would constitute an invalid accumulation of income or to have imposed upon the income given by him for his wife's benefit for life, a burden which would so largely impair that income as to destroy the scheme of his will, and thus bestow upon his wife a right to elect to take her intestate share outright as against the provisions of his will.

I am satisfied that the Court of Appeals, by its decision in the *Clark* case, has eliminated from consideration those matters which, under the decision of the Appellate Division in the *Curley* case, were considered as so affecting the trust as to leave the widow free to elect to take outright as against the trust set up for her benefit. Those matters having been eliminated, and there remaining the sole question of the direction to pay taxes, I feel impelled to hold that the direction should not be so construed as requiring or permitting the executor and trustee to charge estate taxes against the wife's income from the trust, with the resultant diminution to an extent which would reduce it below the provision permitted by the statute to be made for her, and which the testator clearly intended and attempted to make.

Submit decree.