Rockingham, ⎱
May 1, 1906. ⎰

FROST *& a. v.* WINGATE *& a.*

Where a will bequeaths certain articles of personalty upon condition that the beneficiary shall pay the debts and expenses of administration, and specifically disposes of the remainder of the estate to various persons without a general residuary clause, an indebtedness in excess of the value of the property charged therewith is to be equitably apportioned among the devisees and legatees, especially when such procedure will effectuate the testator's general purpose to confer equal benefits upon the objects of his bounty.

BILL IN EQUITY, to determine the title to certain real estate which the plaintiffs claim to own by virtue of the will of Pepperell Frost. The executor is a party defendant and asks for a construction of the will, the first clause of which is as follows : "I give, bequeath, and devise to my son, George Edwin Frost, all my real estate for life, and after his decease to his son, George P. Frost, and his daughter, Ola Frost; also to my son my stock and tools, provisions, and produce, and all my household goods not otherwise bequeathed, provided he shall pay my debts and necessary expenses." In the second and third clauses the testator made some specific bequests of little value, in the fourth he gave fifty dollars to Nellie Pike Hale, and in the fifth gave to his daughter and granddaughter "all the rest of my money." The personal property mentioned in the first clause is not worth over $206.75, while the debts and expenses amount to $688.86; and George Edwin declines to accept the personal property charged with the payment of the debts.

At the date of the will the testator owed nothing, and his personal property, aside from money, was worth some $200 more than it was at his decease. The real estate is of the value of $928, and there is money on deposit amounting to $402. George Edwin is forty-eight years old. The question whether any part of the indebtedness is chargeable to the real estate was transferred from the April term, 1905, of the superior court by *Stone,* J.

*Page & Bartlett*, for the plaintiffs.

*Henry A. Shute*, for the defendants.

WALKER, J. " The situation of the testator, the surrounding circumstances, his family and relatives, the devisees and legatees, the nature, amount, and situation of his property, facts tending to place the court in the position of the testator, constitute evidence competent for our consideration upon the issue of what he meant by the words used." *Stratton* v. *Stratton*, 68 N. H. 582, 586. " Evidence of intention may include various inherent probabilities and the probative force of many circumstances, as well as the literal sense of the words used. When the meaning is found by giving due weight to everything that legally tends to prove it, it is not a matter of discretion whether it shall be adopted or rejected." *Opinion of the Justices*, 66 N. H. 629, 651. The judicial ascertainment of the fact of a testator's intention in disposing of his property is not a judicial usurpation of his power to make a will, or the exercise of a revisory power over his testamentary provisions. The fact of intention, when found from all the competent evidence presented, must, as a matter of law, be given effect, if it is not repugnant to other legal principles, however peculiar or unusual it may seem to be. " The end to be attained in interpreting a will is to effectuate the testator's intention as indicated by the weight of competent evidence, which is not required to come from any given source, or to be of any given weight, if it is relevant to the issue." *Stevens* v. *Underhill*, 67 N. H. 68, 70.

At the time of the testator's death, and when the will took effect, the condition of his estate was such that the value of the personal property he gave to his son was less than his indebtedness; and upon the theory that the debts were charged exclusively upon the personal property bequeathed to the son, the latter has declined to accept the same. There can be little doubt that the testator intended that this property to the extent of its value, if necessary, should be held for the payment of his debts. It would be unreasonable to assume that he expected his son to accept property under the will charged with the payment of debts in excess of its value. Ordinarily a testator is presumed to intend to confer a benefit upon his legatees. *Currier* v. *Currier*, 70 N. H. 145, 147. Hence the question arises how the excess of indebtedness beyond the value of the articles given to the son is to be paid, consistently with the general purpose of the testator; in other words, what was his intention in reference to the payment of the indebtedness existing at the time of his death? He expected his will would operate upon his estate in the condition it might be at his de-

cease ; and he is presumed to have had knowledge of, or to have anticipated, what that condition would be. " A will speaks from the death of the testator, and not from its date, unless its language, by fair construction, indicates the contrary intention." *Weare* v. *Weare*, 59 N. H. 293, 296 ; *Campbell* v. *Clark*, 64 N. H. 328, 330.

On the one hand it is claimed that the entire indebtedness is chargeable, not merely upon the personal property given to the son, but upon the life estate in the land devised to him, while upon the other hand it is insisted that the excess of debts should be paid out of the money deposited in the savings bank. If it is conceded that there may be some evidence inferentially supporting each of these contentions, neither seems to be in accord with the general purpose of the testator. In view of the condition of the estate, either construction, if adopted, would practically defeat his intention in a material respect. See *Wallace* v. *Wallace*, 23 N. H. 149, 156. To charge the excess of debts upon the life estate would reduce the value of the devise to a sum little more than nominal; and to pay it from the money of the estate would effectually annul the bequests mentioned in the fourth and fifth clauses of the will. It is improbable that the testator contemplated or intended either result. He did not intend to give his son a life estate of no value, or to provide for the cancellation of the money bequests. Such an intention is so peculiar and remarkable that it requires strong and convincing evidence that it existed, unless the condition of the estate is such that no other intention could have been entertained. There is no evidence from which it reasonably follows that he regarded the devise in the first clause to his son and grandchildren as more important than the legacy in the fifth clause to his daughter and granddaughter, or that one should bear the burden of debts otherwise unprovided for, to the exclusion of the other.

Nor is there evidence that he understood the technical difference between specific and general or demonstrative legacies, or that he expected his testamentary intention would be ascertained by artificial rules of construction, of which he had never heard and had no knowledge. *Sanborn* v. *Sanborn*, 62 N. H. 631, 641. In the fourth and fifth clauses of his will he undertook to dispose of all his money, with as much particularity as he used in disposing of his stock and tools in the first clause. It probably did not occur to him that there might be a difference in legal effect in disposing of all articles of a class and all his money ; and to men in general the simple language of the will would not suggest technical distinctions of that character. The testator had in mind three kinds of property of which he was the owner, viz., real estate, chattels,

and money. By giving his real estate to one, his chattels to another, and his money to a third party, without a general residuary clause, he would furnish little evidence of an intention that his debts should be paid from one class of property rather than from another. If a testator gives his farm worth $1,000 to A, his driving team of the same value to B, and all his money amounting to $1,000 to C,—thus disposing of his entire estate,—and he leaves debts amounting to $1,000, how could it be said that he intended to charge his indebtedness upon any one of the beneficiaries exclusively, and to cancel the benefit which his language clearly indicates? That his debts must be paid from his estate he is presumed to know; he could not have understood that all the objects of his bounty would each receive $1,000; and as there is nothing to show that he entertained any idea of conferring unequal benefits, the only reasonable conclusion is that an equitable apportionment of the debts among the legatees would be in accordance with his general intention to confer equal benefits upon all.

While the bequest of fifty dollars to Nellie Pike Hale, standing alone, might not indicate a purpose to give her anything of a specific character, but merely to authorize the payment to her of that amount derived from any property of the estate not specifically bequeathed, the fact that in the next clause he disposes of "all the rest of my money" is evidence that the legacy of fifty dollars related specifically to the same fund or subject-matter, and not to a general fund remaining upon the final settlement of the estate. It was not his purpose to leave a general fund, either for the payment of his debts or for the payment of his legacies. In connection with the affirmative provisions of the will, the absence of a general residuary clause indicates under the circumstances an understanding on his part that he had disposed of his entire property by giving to the devisees and legatees distinct parts thereof, after the payment of his debts, and that a residuary clause would be inoperative and useless. It is more probable than otherwise that he intended the money legacies to be as specific as the other provisions of his will, and that in this respect all should have the same effect. Having a sum of money on deposit in the bank, no reason occurred to him why he could not give a part of it to one and the rest of it to another in the same way he might have given one sheep to one and the rest of his flock to another.

Since, therefore, the construction of a will is the ascertainment of the fact of intention from competent evidence, and not the application of technical rules as legal tests, the indebtedness chargeable to the estate in this case, beyond the value of the personal property given to the son, must be borne *pro rata* by the devisees and legatees. P. S., *c.* 196, *s.* 14; *Hall* v. *Smith*, 61

N. H. 144. In this way the testator's general purpose is carried into effect, and no part thereof is defeated or rendered abortive. *Clough* v. *Clough*, 71 N. H. 412, 415.

*Case discharged.*

All concurred.