In the matter of the final account of the executor of HENRY C. DIEHL, deceased.

[Submitted October 19th, 1917.　Decided November 30th, 1917.]

. Transfer taxes assessed against a life estate are payable out of the *corpus* of the estate, not the income.

---

*Mr. J. Harry Hull* and *Mr. Joseph C. Levi* (of the New York bar), for the appellant.

*Mr. Absalom P. Bachman,* for the respondent.

FOSTER, VICE-ORDINARY.

This appeal is from an order of the orphans court of Essex county, overruling an exception to an item of the executor's final account in which allowance was asked for the sum of $2,295.44 paid from the income of the estate to the state treasurer for the transfer tax assessed against the life estate of Mary J. Whaley.

In overruling the exception to this item the orphans court held that the tax was properly paid and deducted from income, and should not be paid from or charged to the *corpus* of the estate.

Under the will of Henry C. Diehl, a resident of Essex county, who died on December 7th, 1915, his estate was left to his executor, in trust for the benefit of Mary J. Whaley, a cousin, to whom the income thereof was to be paid semi-annually, during her life, and upon her death the principal of the estate is to be held in trust for testator's nephew until he attains the age of forty years, when he is to receive the same absolutely. .

It is admitted that the value of the life estate was properly ascertained and that the correct amount of the tax was assessed and paid.

The question for determination is, therefore, whether the tax on the life estate of Mary J. Whaley should be paid from the income or principal of the estate.

This question does not appear to have been decided in this court or in the court of errors and appeals; and counsel and myself have been unable to find any case in which the question has been decided, based upon statutory provisions similar to the provisions of our Transfer Tax act, which is entitled "An act to tax the transfer of property of resident or non-resident decedents, by devise, bequest," &c. (Comp. Stat. p. 5301), except in the case of In re Peirce, 39 N. J. L. J. 234, where Judge Salmon, in the Morris county orphans court, held the tax was payable out of corpus. The question seems to have been raised, but was not decided, in Stengel v. Edwards, 98 Atl. Rep. 424.

Section 2 of the act provides that:

"When any persons shall bequeath or devise * * * any property or interest therein, or income therefrom, to any person *. * * for life * * * and a vested interest in the remainder or corpus of said property to any person * * * , the whole of said property, so transferred as aforesaid, shall be appraised immediately at its clear market value, and after deducting from such appraisement the value of the estate for life * * * shall be immediately levied and assessed, and the tax on the remainder * * * shall be levied and assessed immediately, but such tax shall not become due or payable until the time or period arrives when said remainderman * * * shall become entitled to actual possession or enjoyment of such property, and shall then become due and payable immediately."

Sections 3 and 5 provide in effect that the tax levied and assessed upon a life estate shall be due and payable at the death of the testator. Section 26 defines the word "transfer" as used in the act, to mean "the passing of property." And section 7 directs the executor to deduct or collect the tax therefrom before delivering any legacy or property subject to the tax.

In a normal case a legacy becomes payable in one year after the death of the testator and the right to income in ordinary cases begins at that time. Welsh v. Brown, 43 N. J. Law 37. All income in the meantime falling into the residue. In re Adrian, 101 Atl. Rep. 52; 87 N. J. Eq. 307.

In determining the construction to be placed upon the provisions of the act, under the facts now present, regard must be had not only to the nature of the tax, but also to the apparent

reason for its imposition and the means provided to compel its payment.

Our courts have held that the tax imposed under this act is a premium or privilege upon the devolution of property, resting fundamentally upon the sovereign right of a state to withhold, and hence to limit, the right of testamentary disposition or of intestate succession; that it is a legacy or succession tax. *Wyckoff* v. *O'Neil,* 72 *N. J. Eq.* 880; *Neilson* v. *Russell,* 76 *N. J. Law* 655; *Parrot* v. *Rogers,* 86 *N. J. Eq.* 311. From the rate of taxation and also from the penalties imposed for non-payment, it is apparent that this tax is imposed as a source of revenue for the state. It is clear from the provisions of section 2. that an estate for life is subject to the tax, and the value of the life estate on which the tax is assessed is determined, under the act, by multiplying the life tenant's expectancy in years by the estimated annual income; and it is equally clear that on the value of the life estate thus ascertained the tax is to be immediately levied and paid on the death of the testator. The statute does not in express terms state by whom or from what source the payment of this tax is to be made, and it is only by keeping in view the nature and object of the tax that we can find a satisfactory answer to the question.

It is reasonable to assume that it was the legislative intent to make this source of state income definite and certain, and that it was not intended that the payment of the tax should be delayed or defeated by any contingency. By section 2 it is directed that "the whole of the property so transferred shall be immediately appraised at its clear market value." This section differs from the New York Transfer act, on which our act is modeled, in that it does not state, as the New York law does, that the tax so imposed shall be payable out of the property transferred. And yet this provision must be read into the act if the taxes imposed by it on estates for life are to be collected. As stated, the act requires the taxes imposed to be paid at once, and makes the executor personally responsible for the payment of the same. In the absence of a voluntary payment by the life tenant, the only source from which the executor can obtain the funds for payment of such taxes is from the property transferred. In

the case of specific legacies he is directed, by section 7, to deduct or collect the amount of the tax before he pays or delivers the legacy or property.

By the terms of the will before us, the residue of the estate, at the termination of the period of administration, is to be held by the executor upon the trusts stated, and this residue, or trust fund, is the property transferred under the will. Before the transfer can be effectuated under the statute, the impost on the life estate must be paid by the executor. If the life tenant fail to pay the same, the trust fund and the income, that may have during the administration accumulated thereon, are the only property from which the executor can deduct or collect the funds required to pay the taxes levied on the estate for life. If the executor cannot resort to the principal of the trust fund to pay such taxes, and should the income that may have accumulated be insufficient for the purpose, the executor in order to pay the tax from income would, in violation of the plain provisions of the will, have to withhold the income from the life tenant until a sufficient sum had accumulated to pay the tax and the penalty of ten per cent. incurred in the meantime for failure to pay the same when due. Should the life tenant die before the accumulated income equaled the amount of the tax, the executor must of necessity resort to the principal for the amount required to make up the deficiency, or the tax must go unpaid. And if part of the estate were in a foreign jurisdiction, the taxes imposed therein must first be paid before the executor can obtain possession of the same or of any income accrued thereon. *Senff* v. *Edwards, 85 N. J. Law 67; Bishop* v. *Bishop (Conn.), 71 Atl. Rep. 583.* If the income in hand is not sufficient to pay such taxes, and if they cannot be paid from *corpus,* how are they to be paid? It has been pointed out that it would be an injustice to require the payment of the tax from income in view of the fact that the tax is based upon the expected duration of the life estate, and should the tax be paid from the first year's income and the life tenant then die, she would have paid for an expectancy never realized, and for a transfer of property, if it can be so considered, that never had and never could take place. As the will is silent on the subject of the

payment of taxes, and as there is no authority in the statute permitting the executor to make payment temporarily from principal and return the same to principal from income in gross or in annual installment, it follows that if payment cannot lawfully be made from *corpus,* and for lack of funds it cannot be made from income, then the executor becomes personally liable for the payment of the tax or the state must lose it.

I am unable to adopt the view that the legislature ever intended such construction should be placed upon this provision of the act.

In the amendment to the New York law it is expressly provided that the tax shall be paid out of the property transferred. And the courts of New York have held that under this direction the tax imposed on an estate for life should be paid from *corpus* and not from income, holding in effect, that the creation or enjoyment of a life estate does not amount to such a transfer of property that there is anything tangible therein from which the tax imposed thereon can be paid or collected. *In re Tracy, 179 N. Y. 501; In re Vanderbilt, 172 N. Y. 69; In re Bass, 57 Misc. 531.*

All the difficulties pointed out can be avoided by placing a similar construction on the provisions of our act, and a decree will be advised that the order appealed from be reversed, and that the executor be directed to charge the payment of the tax against *corpus* and not against income.

In regard to the appeal from the allowance made by the orphans court to counsel for the executor, the order in this matter should be affirmed, as the orphans court was in a much better position to determine the nature, extent and value of counsel's services, in that court, to the executor than this court can be, and a decree will be advised accordingly.