IN THE MATTER of the Estate of BERTHA C. BERNHEIMER, Deceased EARLE J. BERNHEIMER, and GEORGE K. BAUM and EARLE J. BERNHEIMER, as Executors of the Estate of BERTHA C. BERNHEIMER, Deceased, Appellants and Cross-Respondents, v. THE FIRST NATIONAL BANK OF KANSAS CITY, MISSOURI, Trustee, and JEWISH MEMORIAL HOSPITAL ASSOCIATION, a Corporation, Respondents and Cross-Appellants, CONGREGATION B'NAI JEHUDAH, Respondent.

GEORGE K. BAUM, Executor of the Estate of BERTHA C. BERNHEIMER, Deceased, Appellant and Cross-Respondent, v. THE FIRST NATIONAL BANK OF KANSAS CITY, MISSOURI, Trustee, Respondent and Cross-Appellant, EARLE J. BERNHEIMER, Appellant and Cross-Respondent, JEWISH MEMORIAL HOSPITAL ASSOCIATION, a Corporation, Respondent and Cross-Appellant, CONGREGATION B'NAI JEHUDAH, Respondent.—Nos. 38602 and 38603.—176 S. W. (2d) 15.

Division Two, December 6, 1943.

*Maurice H. Winger, Harry G. Stocks* and *George J. Winger* for The First National Bank of Kansas City; *Winger, Reeder & Barker* of counsel, and *John H. McEvers, Frank C. Rayburn* and *Jennie F. Cockrum* for Jewish Memorial Hospital Association, appellants, in Case No. 38602.

*Harry L. Jacobs* for Earle J. Bernheimer, cross-respondent in Case No. 38602.

*Harry L. Jacobs* for Earle J. Bernheimer, appellant in Case No. 38603.

*M. L. Friedman* and *Whitson Rogers* for George K. Baum and Earle J. Bernheimer, Executors, appellants, in Case No. 38603.

*Maurice H. Winger, Harry G. Stocks* and *George J. Winger* for The First National Bank of Kansas City, respondent in Case No. 38603; *Winger, Reeder & Barker* of counsel.

*John H. McEvers, John Wesley Reed* and *Lyman G. Friedman* for Jewish Memorial Hospital Association respondent in Case No. 38603; *Ryland, Stinson, Mag & Thomson* of counsel.

██ BARRETT, C.—An action for a declaratory judgment instituted in the circuit court and an appeal from an order of the probate court involved identical problems and were, therefore, consolidated into this single cause. The object of the cause is to construe Bertha C. Bernheimer's will for the purpose of determining which bequest and provision ██ of the will she intended should bear the expense of the federal estate taxes, the state inheritance taxes and the expenses of administration in a sum in excess of $250,000.00, there being no express provision or direction in the will providing for the incidence of such payments in the contingency which has come to pass.

Mrs. Bernheimer was sixty-four years old when she died on December 18, 1937. She was suffering from a recurred cancer of the breast and had not been in good health for some time. Her husband died on September 7, 1937 at the age of seventy-nine years. Mrs. Bernheimer's will was being prepared by her lawyers while she was in the hospital and apparently was executed by her on the day of her husband's death. The property disposed of by her will consisted solely of personal property of the value of $1,296,507.69 composed of the following items: bonds, $1,204,900.15; stocks, $29,248.50; jewelry, $45,770.00; furs, $2,850.00 and cash (which includes the value of her husband's furniture), $14,539.04.

The will consists of an introduction, eleven separate parts and a codicil. We are concerned particularly with but two of the parts, IV and V. The other provisions of the will are of consequence only in so far as they may evince and indicate the testatrix' unexpressed intention with respect to parts IV and V. The introduction describes her family in this language: "the members of my immediate family being my beloved husband, Jerome H. Bernheimer, and my beloved son, Earle J. Bernheimer,—and I having no child or issue of any degree now living, either by blood or adoption, other than the said son." Part I and the codicil, "payable out of stocks and bonds hereinafter mentioned," provided for nine separate cash bequests ranging in amounts from $500.00 to $75,000.00 and totaling $112,500.00. There were gifts of $500.00, $1,000.00 and $2,000.00 to personal employees. There was a gift of $10,000.00 to Congregation B'Nai Jehudah for the

upkeep of the I. E. Bernheimer Memorial and Temple B'Nai Jehudah. The $75,000.00 bequest was to the Menorah Hospital Association. Other parts of the will expressly provided that the gifts in part I were to be net—free and clear of all taxes and expenses. Parts II and III contemplated her husband and son both surviving her or the husband alone surviving. The greater portion of part V and parts VI and VII have to do with the trust created by the will. Parts VIII and IX dispose of the trust upon its termination and, under part VIII it goes to the living issue of her son and if her son has no living issue then two-thirds to the Menorah Hospital Association and one-third to the Congregation B'Nai Jehudah. In part XI her son and his partner, George K. Baum, are appointed her executors, however all executors' fees are to be paid the son.

The contingency which has come to pass and the part of the will now to be construed is as follows:

### "Part IV.

"If my husband fails to survive me, then in such event *all property owned by me at my death, of whatsoever kind and wheresoever situate, excepting, however, all stocks and bonds owned by me at my death, I give, devise and bequeath to my son,* if he survives me; otherwise (that is, if both my husband and son fail to survive me) to go with my stocks and bonds to become a part of the trust hereinafter recited.

### Part V.

Paragraph 1. If my husband fails to survive me but I am survived either by my son or by any issue of my son under forty (40) years of age (or both), *all of the above excepted stocks and bonds owned by me,* after payment of gifts payable therefrom, *I give and bequeath in trust (for the benefit of my son and his issue)* to George K. Baum, The First National Bank of Kansas City, Missouri, and my said son, Earle J. Bernheimer, as Trustees . . .

Paragraph 4(i). Each beneficiary under and during the trust . . . shall be without ability, privilege or power to sell, transfer, assign, pledge, . . . alienate, anticipate or in any manner encumber or affect his beneficial or legal right, . . . in or to any income, principal or asset of the trust; . . .

### Part VI.

The above last mentioned trust, . . . shall, if my son survives me, continue so long as my son shall live; . . .

### Part VII.

Paragraph 1. *During the trust period, all the net income of the trust shall be paid monthly so far as practicable* and in any event each three (3) months *(from date of my death) to my son,* if and *so long as he shall live,—.* . .

Paragraph 3. *In addition to net income, my son,* upon written notice from him to the Trustees, *shall during his life be entitled to draw and receive out of the corpus of the trust* such sums as my son may desire, provided, however, that such payments to my son out of the corpus shall not exceed *Fifteen Thousand Dollars* ($15,000.00) *in any one year."*

As indicated, the contemplated ' events which have transpired up to now are that Mrs. Bernheimer's husband predeceased her and she is survived by her only son, Earle. Under part IV of his mother's will Earle is to receive "all property owned by me at my death, . . . excepting, however, all stocks and bonds." This bequest to Earle consists of the jewelry, the furs and cash, all of which totals in value $63,159.04. The most valuable single item in this bequest is Mrs. Bernheimer's oriental pearl necklace valued at $23,750.00. In addition under part XI he is to receive the executors' fees. And, under part V he is to receive the income from the trust for life and also has the privilege of withdrawing the sum of $15,000.00 a year from the corpus of the trust. The trustees of the trust under part V are to receive "all the above excepted stocks and bonds" totaling in value $1,234,148.65. Upon the termination of the trust period, Earle's life, (as matters stand at this time) the corpus of the trust will be divided between Menorah Hospital Association and Congregation B'Nai Jehudah. Mrs. Bernheimer's estate has been administered and the executors are ready to pay over the funds in their hands in accordance with the provisions of the will and finally close the estate except for the problems involved in this appeal.

Federal estate taxes in the sum of $93,172.62 and Missouri inheritance taxes in the sum of $42,981.78 were assessed against the estate. In addition there have been expenses of administration in the sum of $53,845.60. The question for determination is which bequests and provisions Mrs. Bernheimer intended should bear these expenses.

Except for the Missouri inheritance tax of $977.52 on the property bequeathed directly to Earle (and that item and its incidence is not now in question) the probate court was of the view that the taxes and expenses in a sum approximating $260,000.00 were to be paid, as between the beneficiaries and parts IV and V of the will, from the stocks and bonds comprising the principal of the trust. The circuit court was of the view that the federal estate taxes and the expenses of administration were to be paid from the bequests to Earle until those bequests were exhausted, as they would obviously be by either of the items. The circuit court was of the further view, however, that the Missouri inheritance tax assessed against Earle's interest in the trust was not a charge upon any amount due him but was payable from the corpus of the trust. Earle and George K. Baum as executors and Earle personally have appealed from that portion of

the trial court's judgment assessing the federal estate taxes and the expenses of administration against his bequests. There are cross-appeals by the First National Bank, as a trustee of the trust, and by Menorah Hospital Association, as a contingent beneficiary of the trust, from that part of the judgment assessing the Missouri inheritance tax on Earle's interest in the trust against the principal of the trust. (The Congregation B'Nai Jehudah has not joined in either appeal.) The two appeals present separate problems and will be disposed of separately.

It is assumed by all that the first question, the incidence of the federal estate tax and the expenses of administration, is to be determined and governed by Mrs. Bernheimer's intention as she has expressed it in her will and each contends that their views bring to light and express that intention. The trustee and the hospital contend that the will is plain and unambiguous in language and that by the application of certain well defined rules of construction the testatrix' intention is made to appear. To summarize their contention, as we understand it, they say that the gift to Earle in part IV is a *general* bequest, while the gift of stocks and bonds to the trustees under part V is a *specific* bequest, therefore it follows that the property described in part IV must first be used, even to exhaustion, in paying estate taxes and expenses of administration before resort can be had to stocks and bonds for such purposes. They say that these rules of construction are not mere technical rules to be lightly disregarded but are well established rules of law recognized by our statutes and their application expresses Mrs. Bernheimer's intention as to which bequests she intended should bear the burden of these two items. On the other hand, the executors and Earle offer alternative arguments which they say express ▪ Mrs. Bernheimer's actual, practical intention as to the burden of these items. They say first, that part IV bequests were intended to be preferred over all other gifts and therefore completely exonerated of all burdens and second, if not completely exonerated were intended to stand on a parity and equality with part V gifts and therefore the two bequests must bear the burdens ratably and proportionately. They contend that the will and surrounding circumstances fairly disclose Mrs. Bernheimer's intention that the two parts and their bequests were to stand on a parity so far as liability for expenses and estate taxes is concerned, otherwise the part IV gift is destroyed and nullified. They argue that even applying technical rules of construction the two parts must stand on a parity because if one gift is specific so is the other or if one gift is general and residuary so is the other. They further argue that part V is not a specific bequest but general.

▪ There can be no question as to the value and usefulness of the classification of bequests into general, specific and residuary and the application of their connected rules in construing most wills

and thus arriving at the deceased's supposed intention. But, as with the rules for construing wills that technical words should be construed according to their technical meaning, or that the law favors vested estates they are but auxiliaries to the superior and pre-eminent rule that a will must be construed according to the "true intent and meaning of the testator." Gardner v. Vanlandingham, 334 Mo. 1054, 69 S. W. (2d) 947; Mo. R. S. A. 568. "They are more like statements of fact, which indicate the inferences of fact which the courts are inclined to draw from given states of evidence, in the absence of other evidence which justifies or requires a different inference, than they are like rules of law." 2 Page, Wills, Sec. 916, p. 792. In the absence of specific provision in the will or of any indication of the testator's intention these rules usually give effect to the probable intention of the average or standardized testator. 4 Page, Wills, Sec. 1496, p. 322. But a consideration and application of the rules urged by the trustee and the hospital do not alone solve the problems of this case, and satisfactorily and convincingly produce any intention on the part of the testatrix any more than the will does not do so in express language.

Applying their definitions of "general" and "specific" anything that may be said in this regard of one gift may likewise be said of the other gift. In the first place, into which class the gift falls is also a matter of the intention of the testator (4 Page, Wills, p. 102) as shown by the language of the will when construed as a whole or, when necessary, in the light of the surrounding circumstances. 69 C. J., Sec. 2095; Fidelity Nat. Bank & Trust Co. v. Hovey, 319 Mo. 192, 5 S. W. (2d) 437. Considering a "specific legacy" as "a bequest of a particular thing, or specified part, of the testator's estate, which is so described as to be capable of identification from all others of the same kind" and a "general legacy" as "one which does not direct the delivery of a particular thing or part of the estate, as distinguished from all others of the same kind" (69 C. J., Secs. 2085-2086; 28 R. C. L., Secs. 263-264) can it reasonably be said that these two gifts are so substantially different as to definitely fall in one class or the other and thus demonstrate Mrs. Bernheimer's intention that one class and not the other was to bear the expense of administration and the federal estate taxes? The respondents say that the language of the bequest to Earle in part IV is in most general terms, that no specific item of property is mentioned and that a critical examination of part IV shows that it does not purport to be a bequest "of any particular thing." Conceding that the language in part IV, "all property owned by me . . . of whatsoever kind and wherever situate, excepting, however, all stocks and bonds," is the kind of language usually employed in making "general" gifts and that it is general in its nature yet when it becomes known what it is, its nature, extent and quality and it is contrasted with the nature,

extent and quality of property in part V is it any more "general" than the bequest in part V, or is it any more or less specific than the stocks and bonds of part V? In the first place, in quality and value it is $63,159.04; $45,777.00 worth of it is in jewelry; $2,850.00 worth of it is in furs and the most valuable single item is a string of pearls of the value of $23,750.00. $48,620.00 worth of the bequest, the jewelry and furs, is wholly personal in its nature. On the other hand, there were only two items in part V, $29,248.50 worth of stocks and $1,204,900.15 worth of bonds, and in quality and value they constitute substantially the bulk of her estate and both items are very impersonal in nature. Despite the fact that part V as well as part IV refer to "stocks and bonds" can it be said, when the gifts are known, that one is more specific or more general than the other? Another auxiliary rule in construing wills is that the amount, nature,. extent and condition of the testator's property is a circumstance which may be considered in arriving at his intention. 2 Page, Wills, p. 821.

 As further demonstrating that the gift to Earle is general the trustee and hospital rely on and emphasize the words "*all* property owned by me at my death," particular attention and emphasis being placed upon the word "*all*," and the cases relied on support that general view. For example, in Conway v. Shea, 282 Mass. 25, 183 N. E. 717, the bequest was of "all of my remaining personal property excepting however any money which remains in bank" and the beneficiary of this item contended the gift to him was specific entitling a truck coming to him under this clause to be exonerated of a debt of $946.26. But the court stressed the word "all" and held the gift general in the absence of an intent by the testator to the contrary. It should be particularly noted, however, that this construction by the court equalized the gifts to various beneficiaries and, therefore, apparently fairly carried out the testator's intention. The "*all*" cases are collected in the annotation in 88 A. L. R. 553 and the rule as to personal property summarized, loc. cit. 554, ". . . in the absence of a clearly expressed intention of the testator to the contrary, a bequest of *all the testator's personal property, an aliquot portion of it, the remainder of the personal property, or any bequest in similar general terms,* is a general and not a specific legacy." Or as it is stated by Page, Vol. 4, p. 108, a bequest "of all testator's property" is general, or a bequest "of all testator's personal property" is general and so is a bequest of a specified fraction of the testator's property general. See also 1 Underhill, Wills, p. 554. But, is not this general test as applicable to one of these gifts as it is to the other? It is true that as to language the gift to Earle sounds and is as a fact more general than the language describing the stocks and bonds and yet as to them the description is "all stocks and bonds owned by me." But when one considers what it is that passes, is not V as general as IV, if not more so? As to quality and bulk, again, is it not more nearly

"*all*" of her estate than the "*all*" going to Earle? Is it not also an aliquot part or even the remainder of her property?

As demonstrating that the gift of stocks and bonds to the trustees is specific as contrasted with a general gift the trustee and the hospital rely upon the fact that it is a gift of stocks and bonds, that it comprises a part as distinguished from the whole of the testatrix' estate and the further fact that the word "my" is used in describing it. In a measure all these things are true but they are not decisive. Again "whether a legacy of stock, bonds, or other securities is general or special is governed by the intention of the testator." Annotation 10 Ann. Cas. 490. The fact that a trust is created ·from stocks and bonds may indicate that the gift is specific (69 C. J., Sec. 2104) but as a general rule legacies of stocks or bonds are considered as general. 2 Jarman, Wills, p. 1076. Such gifts are specific in nature if they are clearly referred to so as to distinguish them from gifts of stocks and bonds generally and sometimes the word "my" is sufficient distinguishing identification. 3 Woerner, Amer. Law of Administration, p. 1515. Any word or circumstance sufficiently designating and separating them may be sufficient to show that a bequest of them was intended as specific, as when a certain number of shares of stock in a named bank is bequeathed to each of a number of legatees. In re Estate of Largue, 267 Mo. 104, 183 S. W. 608; Waters v. Hatch, 181 Mo. 262, 79 S. W. 916; 4 Page, Wills, Sec. 1497. But this distinghishing circumstance is not present in the instant case. There is also a further very important difference in the cases relied upon by the trustee and hospital and the present case even though much that is said in the cases supports their contention. In Fidelity National Bank & Trust Co. v. Hovey, supra, there was not only a separation by 'numbers of shares of stock but the will in that case was also construed as containing a residuary clause and that, of course, is a very important circumstance when the question is what bequests, if any, must bear expenses. 69 C. J., Secs. 2177, 2181.

Although the respondents argue that part IV is general and residuary it cannot be claimed that it is residuary in the usually accepted sense and definition of that term any more than part V gift of stocks and bonds is residuary and general. The only difference in the two is that in language the part V gift is of stocks and bonds while part IV gift is of all property except stocks and bonds but, again, when the content of the two gifts is made known it does not appear that one is any more general or specific or residuary than the other.

This is not to criticize or modify these well established auxiliary rules and the cases employing them in the slightest but it is to point out that this is an instance in which they do not apply or that their application does not solve the problems of this case because practically and substantially anything that may be said of one of these gifts in this

respect may also be said of the other gift and, therefore, the rules do not develop in any degree of certainty Mrs. Bernheimer's supposed intention with respect to these two items of expense.

It is said that this will was drawn by expert lawyers and for that reason it must be assumed that the testatrix as well as her counsel must have been aware of the differences in general and special legacies and the incidence of their burdens or benefits. It was stipulated and agreed that Mrs. Bernheimer was a successful business woman familiar with affairs of business, particularly with matters pertaining to stocks and bonds. She was also familiar with the fact of large federal and state taxes as well as expense in connection with the administration of estates. From these circumstances it is argued that she must have intended that the gift to Earle was to bear the expense of these items. But, as the parties all agree, she did not expressly provide for the payment of these items in her will and, as we have attempted to illustrate, the rules with reference to the classification of legacies do not clearly indicate her intention in this respect. Had the will clearly contained a separate, commonly used, general residuary clause the fact that the will was drawn by skillful lawyers and the fact that the testatrix was aware of expenses and taxes might be of compelling significance in indicating where she wished the burden of the expenses and taxes to fall. Louisville Presbyterian Theological Seminary v. Fidelity Trust & Safety Vault Co., 113 Ky. 336, 68 S. W. 427; Amoskeag Trust Co. v. Trustees of Dartmouth College, 89 N. H. 471, 200 Atl. 786; Estate of George J. Pittman, 182 Pa. St. 355, 38 Atl. 133. The only fair assumption is that in the contingency which has come to pass the federal estate taxes and expenses of administration have been overlooked and neither the language of the will nor the rules of classification clearly indicate the testatrix' intention with respect to these items. It can only be said (regardless of how cognizant she may once have been of these items) that when Mrs. Bernheimer executed her will she did not have any intention with respect to whether part IV or part V of her will should bear these expenses. Amoskeag Trust Co. v. Trustees of Dartmouth College, supra. If she had had any such intention doubtless she would have expressed it in unmistakable language as she did with respect to other items and in other contingencies which did not transpire.

But, even if these observations with respect to the classification of legacies are without force and, of course, they do not place and determine the incidence of these burdens, yet there are other circumstances from the will itself and the property disposed of which do indicate the probability that Mrs. Bernheimer did not intend that the part IV gift to her son was to be exhausted in expenses and taxes. What we have said does show that if the gifts must be classified they are in substance the same whether they be specific or general and residuary. We are unable, however, to follow the appellants' argu-

ments to the conclusion that Mrs. Bernheimer intended the bequests to her son to be fully and completely exonerated of any taxes or expenses whatsoever. True enough she was greatly concerned about his welfare and one of the chief if not the principal object of her will was to provide for him and that is one of the first and compelling circumstances. Any one of her gifts to him was a handsome bequest and provision for him. The jewelry and furs alone is a handsome gift. The income from the trust or the privilege of withdrawing $15,000.00 a year from the principal of the trust or the executors' fees are each sufficiently large to indicate her regard for her son. But she did not have implicit, unlimited confidence in him for some cause or other, else she would have given him the more than a million dollars outright and would not have created this trust which he cannot anticipate or dispose of. It is our view, considering this fact, that however these bequests are to be classified it is the stronger probability that Mrs. Bernheimer must have intended that the two gifts, as to expenses of administration and federal estate taxes should stand as equals and bear these items proportionately and ratably. O'Day v. O'Day, 193 Mo. 62, 91 S. W. 921; Brant's Will, 40 Mo. 266; Frost v. Wingate, 73 N. H. 535, 64 Atl. 19; Gilmer v. Gilmer, 151 Miss. 33, 117 So. 830.

To list them without discussion, the additional circumstances compelling this view are as follows: In the contemplated events which have transpired, parts I, IV and V being effective, all the testatrix' property is disposed of and there being no expressed intent and no genuine residuary clause there is a probability that ratable burdens were considered and expected. Amoskeag Trust Co. v. Trustees of Dartmouth College, supra. The phraseology of part IV and part V gifts, so far as the description of the two gifts is concerned is substantially the same or so similar as to be almost indistinguishable. Mrs. Bernheimer was fully aware of the nature and extent of her estate and so she knew that the greater bulk and value of her estate was in bonds and stocks. Knowing these facts and being aware of taxes and expenses she knew, if she considered the matter at all, that the part IV gifts to Earle would not be sufficient to pay these two items or either of them if used for that purpose and so in any event, by the same token, she knew that stocks and bonds would have to bear the greater part of these expenses. The substantial part of part IV property is personal in nature, jewelry and furs, and is bequeathed to the only surviving member of her immediate family, her son. And finally, the testatrix must have expected all gifts to be paid and that in full if possible. Matter of Neil, 238 N. Y. 138, 144 N. E. 481. It is possible by imposing the burdens ratably to substantially pay all gifts and thus carry out every provision of the will without extinguishing the bequests of part IV. Brant's Will, supra; Cornet v. Cornet, 248 Mo. 184, 154 S. W. 121; Snow v. Ferril, 320 Mo. 543, 8

S. W. (2d) 1008; English v. Ragsdale, 347 Mo. 431, 147 S. W. (2d) 653. To sum the thing up, as the Mississippi court did in holding all bequests to be on a parity, 151 Miss. loc. cit. 41; "it is so perfectly manifest that the testator had clearly in mind the quantity, quality and character of his estate, and the objects of his bounty, and that, therefore, it could hardly be said that there is a manifest intention to charge the demands here involved against any particular item of the estate."

In the circumstances of this case ratable apportionment of the federal tax is particularly appropriate. The tax is imposed upon the "transfer of an estate upon death of the owner. It was not a tax upon succession and receipt of benefits under the law or the will. It was death duties as distinghished from a legacy or succession tax. What this law taxes is not the interest to which the legatees and devisees succeeded on death, but the interest which ceased by reason of the death." Y. M. C. A. v. Davis, 264 U. S. 47, 50, 44 S. Ct. 291, 292, 68 L. Ed. 558, 560; 7 A. L. R. 708. This is not a contest between the government and the estate or its representatives or beneficiaries. The contest here is between beneficiaries as to what interests or parts of the estate should bear the burdens of a tax imposed by reason of the owner's death and the consequent transmission of his property and that is a matter of local law. 1 Paul, Federal Estate & Gift Taxation, p. 777; 40 Col. L. R. 690, 698; 2 Bogert, Trusts, Sec. 271, p. 883. Apportioning the tax ratably, in this instance, prevents the exhaustion of the gift to the testatrix' son and thus obviates the defeat of her plain intention and the provision of the will that her son should receive a cerain bequest. 1 Paul, Federal Estate & Gift Taxation, p. 783. Since it is unnecessary to adhere closely to an arbitrary classification of the two gifts or because they can be treated as equals "the best solution appears to be the rule of apportionment." 40 Col. L. R. 690, 698. There is no specific direction in the will as to the incidence of the tax (Beals v. Magenis, 307 Mass. 547, 31 N. E. (2d) 20) and there is no true residuary clause as was the case in Plunkett v. Old Colony Trust Co., 233 Mass. 471, 124 N. E. 265 and Amoskeag Trust Co. v. Trustees of Dartmouth College, supra. On this phase of the case it is the latter fact, a residuary clause and estate, which distinguishes Woodruff v. Holmes, 328 Mo. 143, 40 S. W. (2d) 616. See 1 Paul, Federal Estate & Gift Taxation, p. 778, note 21. All the authorities and their treatment of the incidence and apportionment [23] of federal estate taxes are collected in 40 Col. L. R. 690; 54 Har. L. R. 10 and 1 Paul, Federal Estate & Gift Taxation, Secs. 13, 54. Various specific provisions in wills which have been relied upon as relieving or not relieving bequests of the burdens of taxes are collected in the annotations 51 A. L. R. 454; 116 A. L. R. 854; 141 A. L. R. 847.

The second problem, presented by the cross-appeals, is the incidence of the Missouri inheritance tax. As we have said, the trial

court held that that part of the Missouri tax assessed against Earle's interest in the trust estate was chargeable against and payable from the corpus of the trust. The trustee and the hospital take the position that the tax levied against his inheritance or interest in the trust is a personal charge against him and his inheritance and is, therefore, chargeable to him personally and subject to being withheld from any income or principal distributable to him from the trust or the estate. In substantiation of their position they rely upon that part of the statute (Mo. R. S. A., Ch. 1, Art. 21, Secs. 571-604) providing for the valuation and collection of the tax upon vested life estates and vested remainders, Mo. R. S. A., Sections 577 and 578. In substance these two sections provide that when a decedent bequeaths property or the income therefrom for the life of another with remainders over the property so bequeathed shall be appraised immediately, the life estate valued according to the mortality tables, the value of the remainders determined and "the tax on the transfer of the separate estate or estates . . . shall be immediately due and payable." These two sections also provide that the executor, administrator or trustee in charge of any such property; that is, property subject to the tax, for distribution shall deduct the tax from the property or collect it from the beneficiary "and he shall not deliver or be compelled to deliver any specific legacy or property subject to this tax to any person until he shall have collected the tax thereon." Stress is laid upon the quoted phrases and what is stated to be the state's administrative practice in appraising estates and collecting the tax as compelling the interpretation that the tax must be collected from the beneficiary unless the testator has specifically directed otherwise.

On the other hand, in substantiation of their position that the tax is chargeable to the corpus of the trust and not the income or interest of the beneficiary the cross-respondents rely upon Section 597 of the act. It is said that the life benefits under this trust are not taxable under Section 577 but are taxable under Section 597 because the life estate here is not absolute but is conditional and may be abridged, that it is a spendthrift trust circumscribed by conditions and is not, therefore, the absolute, vested estate the appellants say it is. Emphasis is placed upon this part of the section: "When the property is transferred in trust or otherwise, and the rights, interests or estates of the transferees are wholly dependable upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, a tax shall be imposed upon said transfer at the highest rate which, on the happening of any of the said contingencies or conditions, would be possible under the provisions of this article, and *such tax* so imposed *shall be due and payable forthwith by the executor, administrator, or trustee out of the property transferred*: . . ."

The two conflicting and almost equally divided views as to the burden of inheritance taxes as between the income and the principal of a trust are set forth in the annotation in 117 A. L. R. 121. Although the questions may be related it should again be noted that the contest here is not with the state but is a contest of conflicting interests of beneficiaries and in this respect it is possible too much emphasis has been placed upon the provisions of the statutes and too little attention paid to the will, the nature and extent of the estate and the relationship of the beneficiaries to the deceased, although the force of the statute cannot be denied or ignored. Slight differences in statutory language may apparently account for the differences in views but the various state inheritance tax laws are so fundamentally similar, especially in principle, that the differences in phraseology are not alone sufficient to account for the divergent results (excepting, of course, states now having apportionment statutes).

Those jurisdictions placing the burden of the tax on income rather than on corpus have been attracted by the fact that the inheritance tax is a tax on the right to receive or take property as contrasted with an estate tax imposed on the transmission of property. In re Estate of Rosing, 337 Mo. 544, 85 S. W. (2d) 495. Since the tax is on the right to receive property it is thought that its burden should be paid by the beneficiary on whom the particular rights are conferred. 28 Am. Jur., Sec. 283. The courts adopting this view thus emphasize the sections of the statute relied on by the appellants. 117 A. L. R., loc. cit. 123; Edwards v. Martin, 45 R. I. 233, 121 Atl. 391. They have said that paying the tax from the corpus results in double taxation of the remaindermen since they are required to pay a tax on the full value of their interest on coming into possession of their estates. Brown's Estate, 208 Pa. 161, 57 Atl. 360. However, in the latter case, there were some directions in the will and aside from the directions the court did consider the testator's general intention.

Despite the cogency of the reasoning of these authorities the more compelling reasons lie with the view that the state inheritance tax, in this case, should be charged to the corpus of the trust and not the income or interest of the tesatrix' son in the trust. This view emphasizes the sections of the statutes similar to our Section 597 and is the view of the courts of the states from which our statute was adopted. While that fact is not conclusive it is of some value. In re Estate of Shaw, No. 38588, 351 Mo. 1151, 175 S. W. (2d) 588. In re Tracy, 179 N. Y. 501, 72 N. E. 519 is the leading case and it emphasizes a section of the New York statute almost identical with our Section 597 and particularly the fact that the tax imposed is "due and payable forthwith by the executors or trustees *out of the property transferred.*" See also Matter of Vanderbilt's Estate, 172 N. Y. 69, 64 N. E. 782; In re Diehl's Estate, 88 N. J. Eq. 310, 102 Atl. 738; People v. Lowenstein, 284 Ill. 126, 119 N. E. 917; In re Allen's Estate, 243 Wis.

44, 9 N. W. (2d) 102. Some of these cases point out that a bequest of the income for life from a trust does not transfer the trust estate to the beneficiary but only creates a lien on it; the title to the trust passes to the trust devisees and not to the one to whom the charge is payable. Estate of Brown, 24 Haw. 443. The Ohio and North Carolina courts followed In re Tracy in stressing that ''such tax so imposed shall be due and payable forthwith by the executors or trustees out of the property transferred.'' Wellman v. Cleveland Tr. Co., 107 Ohio St. 267, 140 N. E. 104; Wachovia Bank & Tr. Co. v. Lambeth, 213 N. C. 576, 197 S. E. 179. As to the distribution of the burdens of the tax as between the beneficiaries of the income and the beneficiaries of the corpus of the trust, ''although the tax is charged against corpus, *the burden is borne in part by the life beneficiary, since the depletion of the corpus to pay the tax results in a corresponding depletion of his income.*'' 117 A. L. R., loc. cit. 123; In re Tracy, supra; Wellman v. Cleveland Tr. Co., supra.

In some respects Woodruff v. Holmes, 328 Mo. 143, 40 S. W. (2d) 616 may be contrary to this view. As has been noted, however, the case is distinguishable from the instant case in that the will there involved was held to contain a residuary clause. Furthermore, the trust estate involved did not come into existence until the administration of the estate was completed. 117 A. L. R., loc. cit. 128; In re Brown's Estate, supra. The case is subject to the criticism that it specifically says, loc. cit. 151, that there is no difference in the federal estate tax and the New York inheritance tax. Compare In re Rosing, supra; 28 Am. Jur., Secs. 278-279 and all the cases previously cited in this opinion. Our general administration statutes were emphasized in this case. But, after it was pointed out that the trust did not come into existence until administration was completed the court made this observation, which may permit the views of this opinion: ''If a specific and outright bequest had been made of certain shares of stock to the trustees for the benefit of exceptor, such shares of stock would be considered as appropriated at the time of the testator's death and whatever dividends accrued upon them from and after that time would belong to the beneficiary . . . and exceptor's theory would be applicable, but such is not the instant case.'' Bryant v. Green, 328 Mo. 1226, 44 S. W. (2d) 7 was an attempt to apportion the federal estate tax and the state inheritance tax against real estate and is therefore not in point. Annotation 105 A. L. R. 320.

The judgment in assessing the expenses of administration and the federal estate tax is reversed and the cause remanded with directions to decree ratable, proportional contribution in accordance with this opinion, otherwise the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.