Stella M. OSBORN, Individually and as Co-executor of the Estate of Joseph A. Osborn, Deceased, Respondent,

v.

Charles F. OSBORN, Individually and as Co-executor of the Estate of Joseph A. Osborn, Deceased, et al., Appellants.

No. 47410.

Supreme Court of Missouri,

Division No. 1.

March 14, 1960.

Rehearing Denied April 11, 1960.

Joseph Langworthy, Kenneth J. Farmer, Pacific, for defendants-appellants.

Gillette F. Wright, St. Louis, for respondent (plaintiff).

COIL, Commissioner.

Joseph A. Osborn died testate on September 22, 1954, survived by his widow Stella, present respondent, who, individually and as coexecutor of her husband's estate, brought an action to construe her husband's will and for other relief. Appellants, defendants below, are Charles F. Osborn, testator's son by a former marriage and coexecutor of his father's estate, Charles F. Osborn, Jr., testator's grandson, and the three minor children of Charles. Jr.

 The dominant question is which of testator's bequests should abate by reason of an insufficiency of assets in his estate in excess of $20,000. Inasmuch as it is the contention of both respondent and appellants that the entire deficiency should be borne by the other, it is apparent that this court has jurisdiction because of the amount in dispute.

Testator's will was executed on June 24, 1953, and a codicil revoking Article Third on April 7, 1954. At the time he executed his will testator knew that he and Stella had been happily married for more than ten years, that Stella was then 58 years of age, and that she was totally dependent on him for support except for a checking account in her name of about $1,000; he knew also that his son Charles was 52, was employed by testator, owned his home, and had some income other than from his employment; and that Charles, Jr., was 26, employed, and self-supporting. There was no substantial change in any of the foregoing between the time testator executed his will and the time of his death.

Testator's will, in part summarized and in part set forth, was:

Item One provided for payment of debts.

(The will included the marginal notations.)

*Disposition of personal effects.*

"Second: All articles of household furniture and furnishings, books, pictures, silverware, my automobile; all articles of household use, not previously given to my wife, which I may own at the time of my death, I give and bequeath unto my beloved wife, Stella M. Osborn, as her absolute property.

*Specific Bequest.*

"Third: I hereby give and bequeath to Edith A. Osborn, mother of my grandson, Charles F. Osborn, Jr., the sum of Five Thousand Dollars ($5,000.00), the same to be paid to her outright.

"Fourth: I give, devise and bequeath outright to my son, Charles F. Osborn, the following:

*Specific Bequest.*

"(a) Two hundred seventy-five (275) shares of common stock of the American Telephone and Telegraph Company.

"(b) Two hundred (200) shares of common stock of the May Department Stores, Inc.

"(c) One lot, which I now own, located at Poepping and Carondelet Boulevard, City Block 3289, of the City of St. Louis, Missouri.

"In the event my said son, Charles F. Osborn predeceases me then I direct that the property herein devised and bequeathed to him, under this Article Fourth, be ad[d]ed to the Trust Fund hereinafter created, Under Article Seventh for the benefit of my grandson, Charles F. Osborn, Jr., and that the same shall be governed by the provisions contained in said Article Seventh.

"Article Fifth: I give and bequeath to my son, Charles F. Osborn and to my grandson, Charles F. Osborn, Jr., share and share alike, to be divided amicably between them, all of

my tools of every description, electrical testing instruments, shop equipment, wearing apparel, office equipment, all jewelry, technical books, cameras, and photographic equipment.

"Article Sixth: In the event my wife, Stella M. Osborn, survives me, then I give, devise and bequeath unto my said wife an amount equal to the maximum marital deduction allowed with respect to my estate under the provisions of the Internal Revenue Code upon the basis of the value of my adjusted gross estate as finally determined for Federal Estate Tax purposes, less the value of any property or interests in property qualifying for said marital deduction which pass or have already passed to my said wife under any provision of this Will, by operation of law or otherwise. Included in the gift made by this Article shall be the following:

*Provision for Wife.*

"(a) Our residence at 5835 DeGiverville Avenue, St. Louis, Missouri.

"(b) My diamond barpin.

"(c) Two hundred seventy-five (275) shares of common stock of the American Telephone and Telegraph Company, outright.

"(d) Two hundred (200) shares of common stock of the May Department Stores, Inc. outright.

provided the said residence, jewelry and stock, above described, shall not exceed the amount allowable under the marital deduction provision of the Federal Internal Revenue Code, 26 U.S.C.A. § 2056; if the above mentioned assets exceed the marital deduction allowable, the executors, with the advice and consent of my wife, shall adjust the same to bring them within the limit of the said marital deduction clause of the Internal Revenue Code; if the named assets are insufficient to provide the requisite assets under the marital deduction, as herein provided, then the executors of my estate shall satisfy the insufficiency either in cash or in kind but exclusively from assets qualifying for the said marital deduction. I fully realize that my executors have the right to use an optional valuation date in determining the adjusted gross value of my estate in order to reduce Federal Estate Taxes which will determine the amount of the gift made by this Article.

"The provisions, bequests and devises made in this my Last Will and Testament for my said wife, Stella M. Osborn, shall in no event exceed one-half of my estate, and I am leaving the same to her outright. I direct that the provisions herein made for my said wife shall be in lieu of her dower, homestead, common law and statutory rights, any widow's allowance to be deducted from the provisions herein made.

"In the event my said wife, Stella M. Osborn, predeceases me, then the property real, personal and mixed, which I have bequeathed and devised to her, I give, devise and bequeath as follows: One-half thereof to my son, Charles F. Osborn, outright, and the other one-half of the said property bequeathed to my wife, under this Article Sixth, should she predecease me, I direct that it be added to the Trust Fund created under Article Seventh of this my last Will and Testament, to be held for the benefit of my grandson, Charles F. Osborn, Jr., the same

to be governed by the same provisions as set out in said Article Seventh of this my last Will and Testament."

Article Seventh gave to his son Charles and a cotrustee 275 shares of American Telephone and Telegraph, 200 shares of May Department Stores, and a lot in St. Louis County in trust for the benefit of his grandson, Charles, Jr.

Article Eighth gave $10,000 to Charles F. Osborn, Jr., and a cotrustee in trust for the benefit of his three great-grandchildren, and provided that "In the event that the assets in my estate, at the time of my death, are insufficient to provide this Trust Fund of Ten Thousand Dollars ($10,000.00), then any deficiency shall be made up from the Trust created under Article Seventh of this my Last Will and Testament for the benefit of my grandson, Charles F. Osborn, Jr."

Article Ninth and Tenth related to the authority, duties, and powers of the trustees and to the date of income payments.

Article Eleventh was a residuary clause providing for any residue to go to the son Charles.

Article Twelfth directed the executors to pay estate and inheritance taxes and that such were not to be deducted from any bequest.

Testator's estate (valued as of the date of death) for federal estate tax purposes totaled $203,911.38 consisting of probate estate assets of $192,147.50, including 872 shares of American Telephone and Telegraph and 600 shares of May Department Stores; and of joint property of $11,763.88 including the home valued at $10,000. While the exact amount of the widow's share by the terms of the will could not be exactly determined because of unknown amounts to become due for court costs and attorneys' fees, still it was and is apparent that there were and are insufficient assets to permit distribution in full of all the bequests of the will.

It was and is respondent widow's contention that she should receive one half of testator's adjusted gross estate for federal estate tax purposes. Appellants took the position below and contend here that the provision for the widow constituted a general bequest and those to Charles Osborn and Charles Osborn, Jr., were specific; that consequently those specific bequests should be paid in full and, further, that the $10,000 bequest in Article Eighth must come from the amount remaining after the payment of the Osborns' specific bequests. The trial court construed the will in the manner advocated by the respondent widow and thus found and adjudged that she was to receive an amount equal to the maximum marital deduction as finally determined for federal estate tax purposes.

The trial chancellor made extensive findings of fact and indicated clearly the theories upon which he reached his conclusions. In the view we take, it will be unnecessary to refer to many of the findings of fact or to the alternative reasons and theories the trial chancellor set forth for his conclusions. Sufficient for our purposes is this language in the trial court's findings and opinion: "Irrespective of whether the bequests to Charles F. Osborn and for Charles F. Osborn, Jr., are to be characterized as 'specific' or not, considering the Will as a whole and the attendant circumstances, it seems clear that when in Article Sixth, testator stated 'if the named assets are insufficient to provide the requisite assets under the marital deduction, as herein provided, then the executors of my estate shall satisfy the insufficiency either in cash or in kind but exclusively from assets qualifying for the said marital deduction', that he intended that *any* assets which might be part of his probate estate and which would qualify for the marital deduction should be used to satisfy the insufficiency, thus assuring that his widow would receive the full amount of her bequest in any event and

that his estate would receive the full benefit of the marital deduction provided by the Internal Revenue Code. Such is the plain effect of the words he used; * * * the provision in Article Eighth that such bequest be satisfied if necessary out of the bequest in trust for his grandson tends to support the holding that bequests such as he gave to his son and for his grandson were not regarded by testator as irreducible but were to be reduced when necessary to permit full satisfaction of other provisions of the Will * * *."

The foregoing quotation from the trial chancellor's memorandum opinion well expresses the view we have and the conclusion we have reached. We note, however, the reference to the "attending circumstances" in the above quotation, that is, to the facts respecting testator's knowledge of and the condition of his family at the time of the will's execution and to the time of his death. Inasmuch as we are of the view that the reasonable construction of the will, considered alone, is that stated by the trial court, our inclusion of the evidentiary facts as to the "attending circumstances" in this opinion is not to indicate our reliance on them other than to demonstrate that the surrounding circumstances shown in evidence did not tend to change the otherwise apparently clear meaning of the language of the will.

■ Under the view we take, it is wholly unnecessary and certainly unrewarding to determine which of the articles of the will constitute specific and which constitute general bequests. That is true because it cannot matter what technical labels are applied to the bequests in question when the language of the "Provision for Wife," Article Sixth, is accorded the meaning it reasonably must have. That article directs testator's executors to satisfy any insufficiency in the assets necessary "to provide the requisite assets under the [maximum] marital deduction" by supplying cash or assets in kind, provided that the assets supplied qualify

for the marital deduction. Now the *only* assets possibly available to supply any such insufficiency (in case of testator's death at a time when his total assets were not sufficient to permit distribution in full to all legatees and thus provide no residuary estate) were assets which testator had bequeathed to Charles and Charles, Jr. While testator may have believed (in the sense that he hoped) he would live long enough for his estate to become sufficient to permit payment in full of all bequests, he must have executed his will recognizing that at that time his total assets were insufficient to permit full distribution of all bequests and, consequently, must have known that in the event of his early demise, the assets which he directed be used to supply the deficiency in the maximum marital deduction had to come from the so-called specific bequests to Charles and Charles, Jr. The only restriction or limitation on the assets to be used to supply the insufficiency was that they qualify for the marital deduction.

■ Once it is determined that testator's intention is clear from the language of the will, auxiliary rules of construction, including a determination of which bequests are specific and which general, and the otherwise applicable order of appropriation and abatement of assets, Section 473.620, subd. 3 RSMo 1949, V.A.M.S., are inoperative. "There can be no question as to the value and usefulness of the classification of bequests into general, specific and residuary and the application of their connected rules in construing most wills and thus arriving at the deceased's supposed intention. But, as with the rules for construing wills that technical words should be construed according to their technical meaning, or that the law favors vested estates, they are but auxiliaries to the superior and pre-eminent rule that a will must be construed according to the 'true intent and meaning of the testator.' Gardner v. Vanlandingham, 334 Mo. 1054, 69 S.W.2d 947, 949; * * * In the absence of specific provision in the will or

of any indication of the testator's intention these rules usually give effect to the probable intention of the average or standardized testator. 4 Page, Wills, Sec. 1496, p. 322." In re Bernheimer's Estate, 352 Mo. 91, 176 S.W.2d 15, 19[1].

Thus it is that having found what seems to us to be the clearly expressed intention of the testator it would do violence to that intention to reach another result by employing auxiliary aids properly applicable only when testator's actual intent is not definable. We hold, therefore, as did the trial court, that to give effect to testator's intention the widow must receive an amount equal to the maximum marital deduction as finally determined for federal estate tax purposes.

There are other findings and conclusions of the trial chancellor which are attacked for reasons premised upon contentions which necessarily have been disposed of by our holding above. Some other of appellants' eighteen separate points relate to the question whether Charles Osborn was estopped by reason of his course of conduct to now take his present position. The view we have taken as to the meaning of the will makes it wholly unnecessary to reach or determine the estoppel question and, of course, unnecessary to set forth the evidence on that issue.

■ Appellants contend that the trial chancellor erred in failing to have ordered the real property mentioned in Article Fourth (c) and Article Seventh distributed to Charles F. Osborn and to him as trustee, respectively. We are not sure we appreciate appellants' position in that respect but, as we understand it, appellants say Section 473.617 RSMo 1949, V.A.M.S. makes such order of distribution proper. But the "decree of final distribution" referred to in Section 473.617 is the decree of the probate court and it would appear, therefore, that the trial chancellor properly omitted any such provision.

Appellants' contentions that a motion to strike and to make more definite directed to plaintiff's petition should have been in part sustained are without merit in so far as any questions involved could possibly affect any meritorious question on this appeal.

The trial chancellor adjudged that no part of the federal estate tax should be paid by respondent or withheld directly or indirectly from assets distributed to her. Appellants made no specific contention in their brief attacking that portion of the judgment. Respondent, however, included this point in her brief: "No portion of the federal estate tax should be bourne by the bequest to the widow, for such assets did not contribute to cause any of the tax and the bequest itself reduced the tax." Respondent says in that connection that although the trial court found it unnecessary to rule as she here contends, she nevertheless "wishes to submit it with the case."

■ One of the trial court's findings was: "The assets to be distributed to the plaintiff are fully deductibly in computing the federal estate tax and hence do not contribute to cause any portion of the tax. This Court's conclusion that no part of the federal estate tax can be charged to her or deducted from assets to be distributed to her does not rest on that fact. Instead, having found that testator intended her to have an amount equal to the maximum marital deduction permissible, and since payment by her of any part of the federal estate tax would reduce the deduction and hence increase the tax, plaintiff is entitled to have distributed to her the full amount of her bequest, undiminished by any portion of the federal estate tax." Appellants in their reply brief have taken a position on the question contrary to that of respondent. In view of the fact that the trial court found it unnecessary to decide the question posed by respondent, and appellant did not attack the action of the trial

court in that respect, we are of the opinion that the matter is not properly before us for decision.

The judgment is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.